## PEOPLE v MEATTE

Docket No. 78-5319. Submitted April 9, 1980, at Detroit.—Decided June 4, 1980.

Richard L. Meatte was convicted in a bench trial of manslaughter in Macomb Circuit Court, Robert Chrzanowski, J. Defendant appeals by leave granted upon his delayed application for appeal. *Held:*

1. A pathologist may testify regarding the capability of shotgun charges to carry material from a steel door into body wounds.

2. A neighbor who was infirm, hard of hearing and sound asleep throughout the altercations which resulted in the homicide was not a res gestae witness.

3. A trial judge has more discretion in questioning witnesses in bench trials than in trials before juries.

4. The determination of whether to bifurcate a trial or to try a case to more than one jury rests in the sound discretion of the trial judge.

5. A defendant's claim of insanity in a criminal trial does not necessarily negate a defendant's claim that he took the life of another in an honest belief that his own life was in danger.

Affirmed.

1. WITNESSES — CRIMINAL LAW — EXPERTS — PATHOLOGISTS.

A pathologist may testify regarding the capability of shotgun charges to carry material from a steel door into body wounds.

2. WITNESSES — CRIMINAL LAW — RES GESTAE — HOMICIDE — HEARINGS.

A neighbor who was infirm, hard of hearing and sound asleep throughout an altercation which resulted in a homicide is not a res gestae witness to the homicide.

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Expert and Opinion Evidence § 111.
[2] 29 Am Jur 2d, Evidence § 724.
[3] 75 Am Jur 2d, Trial § 88.
[4] 75 Am Jur 2d, Trial § 17.
[5] 21 Am Jur 2d, Criminal Law § 45.

3. JUDGES — TRIAL — WITNESSES — QUESTIONING.

A trial judge has more discretion in questioning witnesses in bench trials than in trials before juries.

4. TRIAL — BIFURCATION — JUDGES — DISCRETION.

The determination whether to bifurcate a trial or to try a case to more than one jury rests in the sound discretion of the trial judge.

5. CRIMINAL LAW — DEFENSES — INSANITY — SELF-DEFENSE.

A defendant's claim of insanity in a criminal trial does not necessarily negate a defendant's claim that he took the life of another in an honest belief that his own life was in danger.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, and *Robert J. Berline,* Assistant Prosecuting Attorney, for the people.

*George E. Michaels,* for defendant on appeal.

Before: DANHOF, C.J., and CYNAR and MAC-KENZIE, JJ.

PER CURIAM. The defendant was charged with second-degree murder and was convicted in a bench trial of manslaughter. Sentenced to imprisonment for a term of 10 to 15 years, he appeals by leave granted upon his delayed application for appeal.

The killing occurred at the apartment of the victim, McCoy. A neighbor testified that she observed a man struggling with McCoy in McCoy's darkened apartment. Leaving her apartment door, she returned to the peephole to observe the man fire several shots through McCoy's closed door. Other occupants of the building reported scuffling and shots at approximately the same time of the evening. One occupant, an elderly woman, was awakened with some difficulty by the police and

reported that she was hard of hearing and had slept soundly throughout the evening.

Officers responding to a neighbor's call found McCoy's apartment door ajar, with three shotgun blasts through it. McCoy's nude body was within. Other officers followed a car leaving the scene with its lights off. In it was the defendant, in possession of a shotgun and six spent shells. He had a head wound.

Werner Spitz, a pathologist, testified that McCoy died from any one of four shotgun wounds that were discovered on the body. Two of the wounds had within them white plastic beads similar to those that filled the apartment's insulated door. It was the doctor's opinion that those beads had been carried by the shotgun charge from inside the door, indicating that at least two of the shots that struck McCoy were fired through the door. Defense counsel challenged the doctor's qualifications as a ballistics expert and objected to the judge's questions about the wounds as serving a prosecutorial function.

The defendant testified that he went to McCoy's apartment to talk to him, but McCoy answered the door with a shotgun in his hand. A fight resulted. The defendant, wrestling the gun from McCoy, found himself locked out of the apartment and so fired two shots into the door to open it and discover why McCoy had attacked him. The fight resumed, the defendant said, but he remembered nothing more until he found himself standing over the wounded McCoy. Retrieving the spent shells, as he had been taught in the army, he left.

Psychiatrist Herbert Raskin testified that at the time of the shooting the defendant was suffering from dissociative hysterical neurosis, arising in part from the defendant's military combat experi-

ence and brought on by the confrontation with McCoy's apparently loaded shotgun. This mental disorder, the doctor said, was quite consistent with the defendant's claimed loss of memory, and indicated an inability to recognize what he was doing or to control his actions. This diagnosis was inconsistent, he said, with the defendant's statement to police that he recalled pointing and firing the weapon at McCoy. A prosecution psychiatrist testified that the defendant was in full control of his faculties at the time of the shooting, evidenced in part by the rather full account of the shooting the defendant had given the witness, including his statement that he shot McCoy "several times".

The defendant argues on appeal that pathologist Spitz was allowed to give testimony relating to the science of ballistics without qualification as an expert in that field. In reviewing this assertion, we must decide only whether the trial court abused the discretion vested in it to decide the matter in the first instance. *People v Pepper,* 36 Mich App 437; 194 NW2d 67 (1971). The thrust of the witness's testimony was not that a shotgun charge could penetrate an insulated steel door (that was established by other testimony) but that material from such a door could be carried by the charge into wounds. In this he was both trained and experienced and was thus fully qualified to express his opinion. *Cf., People v Carter,* 78 Mich App 394; 259 NW2d 883 (1977).

The second claim of error brought by the defendant asserts that the trial judge improperly refused to designate McCoy's elderly and infirm neighbor a res gestae witness. We note at the outset that the prosecutor offered to accompany the court and counsel to the witness's home to afford the defendant the opportunity to question

her and that the defendant declined. Neither did the defendant ever request a hearing regarding what the witness might have had to offer had she been called. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), requires such a request as a condition of raising this issue on appeal. In any event, the trial court was justified in ruling that the neighbor, infirm, hard of hearing and sound asleep throughout the altercation, was not a res gestae witness. *People v Abrego,* 72 Mich App 176; 249 NW2d 345 (1976), *People v Kaigler,* 81 Mich App 340; 265 NW2d 324 (1978).

The defendant's third claim is that the trial court erred in its questioning of some witnesses. In all, the bench engaged five witnesses (including the defendant) in questioning. The defendant objected to the examination of only three. While this trial shows unusually extensive questioning by the court, we note that a judge's discretion to do this is greater in bench trials than in trials before juries. *People v Wilder,* 383 Mich 122; 174 NW2d 562 (1970). See also *Tait v Ross,* 37 Mich App 205; 194 NW2d 554 (1971), *lv den* 386 Mich 787 (1972). This questioning showed no bias and, in one important instance, favored the defendant by establishing to the satisfaction of the court that the shotgun involved belonged to McCoy, thus leading the court to convict the defendant of manslaughter rather than the charged offense of murder.

Prior to trial the defendant brought a "motion for bifurcated trial with two juries", asserting that he had elected to present defenses based on insanity and self-defense and that no single jury could fairly try a case in which such an "inconsistency of major proportions" was present. He rejected the trial court's offer to try the defenses sequentially to the same jury. This ruling is the basis of the defendant's last claim of error in this appeal.

Only one Michigan case has addressed the problem presented by a defendant who wishes to defend both on the merits and on the basis of insanity. In *People v Donaldson,* 65 Mich App 588; 237 NW2d 570 (1975), this Court noted that some other jurisdictions have recognized that where an insanity defense is alleged together with a defense on the merits, the trial should be bifurcated:

"We hold this determination to be within the trial court's sound discretion. In other states it has been said that the trial court should consider two factors in such a decision: (1) whether defendant has a meritorious defense, and (2) whether there is a substantial claim of insanity related to the incident. Considering the probable expenditure of great additional time and resources, defendant has not shown that such an unusual step is necessary or warranted in this case." 65 Mich App 588, 590.

We agree that the decision to bifurcate a trial or to try a case to more than one jury rests in the discretion of the trial judge. *Cf.,* GCR 1963, 505.2. The right of a defendant to raise alternative defenses does not imply a concomitant right to sketch each defense on the clean slate of a naive jury. See *People v Yukl,* 83 Misc 2d 364; 372 NY2d 313 (1975). The prejudice that arises in the presentation of truly inconsistent defenses before a single jury stems not from the single jury procedure but from the presentation of a defense that is rendered less credible by the defendant's choice to present a second version of the facts, *i.e.,* alibi together with insanity or coercion. If more than one defense is credible, neither is likely to be hurt by the assertion of the other. In this case, we note, the "dissociation" that allegedly impaired the defendant's capacity for criminality does not rule out the

possibility that he acted with an honest belief that his life was in danger: His psychiatric evidence went more to his inability to recall the shooting than an inability to recognize his danger at the time, if indeed he was in danger from McCoy. Any one of a great variety of mental disorders might, in an appropriate case, support an insanity defense. It is therefore not clear that a claim of insanity necessarily negates a defendant's claim that he took the life of another in an honest belief that his own life was in danger. The trial court did not abuse its discretion in refusing the defendant's request to try each defense to a separate jury.

Affirmed.