*In re* FORFEITURE OF $1,159,420

Docket No. 133003. Submitted October 15, 1991, at Detroit. Decided May 4, 1992, at 9:45 A.M. Leave to appeal sought.

The Wayne County Prosecutor brought an action in the Wayne Circuit Court, seeking forfeiture of $1,159,420 and other property that had been seized from claimants Robert and Pamela Hawkins and others on the basis that the money and property were traceable to drug trafficking. The court, Michael J. Talbot, J., entered judgment of forfeiture. The claimants appealed, alleging several errors.

The Court of Appeals *held:*

1. The circuit court had jurisdiction with regard to all the property sought to be forfeited except the claimants' realty in Florida. The court improperly ordered the property in Florida. to be forfeited.

2. Reversal is not warranted on the basis of the court's alleged erroneous denial of the claimants' motion to change venue. Michigan's venue provisions are not jurisdictional.

3. The prosecutor properly was allowed to argue alternative theories with regard to the grounds upon which forfeiture was sought.

4. Although the claimants were entitled to notice of service of any discovery requests on witnesses, no prejudice resulted from the lack of notice in this case.

5. The court properly refused to allow the claimants to question the people's witnesses with regard to their backgrounds and addresses on the basis that the line of inquiry was not relevant.

6. The trial court properly found that collateral estoppel

REFERENCES

Am Jur 2d, Courts § 122; Criminal Law §§ 325-332, 892; Drugs, Narcotics, and Poisons § 34; Forfeitures and Penalties § 36; Judges §§ 166 *et seq.*

Supreme Court's views as to due process requirements of forfeitures. 76 L Ed 2d 852.

Forfeiture of money to state or local authorities based on its association with or proximity to other contraband. 38 ALR4th 496.

precluded the redetermination of the validity of a search warrant that had been determined to be valid in a prior federal court action against Robert Hawkins.

7. The trial court did not clearly err in ordering forfeiture of the claimants' property, except the Florida property. There was sufficient evidence to demonstrate a substantial connection between drug trafficking and the property. A connection with a specific incident of drug dealing need not be shown for each asset; rather, the assets need only be traceable to drug trafficking.

8. The trial court properly found that property that Pamela Hawkins claimed as her individual property or property owned jointly with her husband, Robert Hawkins, was subject to forfeiture pursuant to a theory of joint enterprise.

9. The trial court did not err in ordering forfeiture of assets traced by the prosecution to origins more than two years before the date on which the forfeiture action was initiated. No property acquired before the effective date of the forfeiture statute was forfeited. The period of limitation begins to run when the drug offense is complete.

10. The trial court's factual findings were not erroneous. The court properly concluded that the prosecution could rely on a net-worth theory while not having to find that the assets in this case were traceable to any specific drug transaction.

11. The trial court did not abuse its discretion in denying the claimants' motion for recusal or disqualification. The claimants received a fair trial.

12. The denial of the claimants' request for a jury trial was proper. A jury trial is not available in forfeiture actions.

13. The trial court properly found that forfeiture of the bank accounts of the minor claimants was warranted under the facts of this case.

Affirmed in part and reversed in part.

DOCTOROFF, J., dissenting, stated that reversal is mandated because the trial court erroneously denied the claimants' motion for a change of venue and the court's conduct during the course of the trial denied the claimants a fair trial.

1. COURTS — JURISDICTION — REAL PROPERTY.
    Michigan courts do not have jurisdiction over land situated outside territorial borders of the state (MCL 600.751; MSA 27A.751).

2. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — NOTICE OF DISCOVERY.
    The claimants in a forfeiture action under a controlled substance

provision of the Public Health Code are entitled to notice of service of any discovery requests on witnesses (MCR 2.107[A], 2.305[A][1], 2.306[B][1]; MCL 333.7521; MSA 14.15[7521]).

3. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel precludes the relitigation of an issue in a subsequent and different cause of action between the same parties where the prior proceeding ended in a final judgment and the issue actually was litigated and determined.

4. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — FORFEITURE OF ASSETS.

Anything of value that can be traced to an exchange for a controlled substance is subject to forfeiture, and a connection with a specific incident of drug dealing need not be shown with regard to each asset sought to be forfeited (MCL 333.7521[1][f]; MSA 14.15[7521][1][f]).

5. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — PROPERTY OWNED BY ANOTHER — JOINT PROPERTY.

Property owned by another is not subject to forfeiture under a controlled substance provision of the Public Health Code where the owner of the property lacks knowledge with regard to the drug activity upon which the forfeiture is based; in the case of joint ownership of assets, the state may forfeit only the ownership interest of the noninnocent owner (MCL 333.7521[1][d][ii],[f]; MSA 14.15[7521][1][d][ii],[f]).

6. JUDGES — BIAS — DISQUALIFICATION.

Actual prejudice must be shown before a trial judge may be disqualified; the party challenging a judge on the basis of bias or prejudice has the burden of overcoming the presumption of judicial impartiality (MCR 2.003[B][2]).

7. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES VIOLATIONS — JURY TRIALS.

There is no right to a jury trial in an action for the forfeiture of property traceable to a controlled substances violation (MCL 333.7521; MSA 14.15[7521]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Andrea Solak,* Chief of Special Operations, *Charles H. Marr,* Director, Forfeiture Unit, and *Mary Sue Czarnecki,* Assistant Prosecuting Attorney, for the people.

*James W. Burdick, P.C.* (by *James W. Burdick*), for the claimants.

*Stuart L. Stein,* for claimant Robert Hawkins.

Before: GRIFFIN, P.J., and DOCTOROFF and BRENNAN, JJ.

BRENNAN, J. Claimants appeal as of right from an August 2, 1990, judgment of forfeiture of property seized under a controlled substances provision of the Public Health Code, MCL 333.7521; MSA 14.15(7521), entered by Wayne Circuit Judge Michael J. Talbot. We affirm in part and reverse in part.

The record reveals that, in 1988, claimant Robert Hawkins pleaded guilty in Detroit Recorder's Court of attempted possession of less than twenty-five grams of cocaine, MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v); MCL 750.92; MSA 28.287. The case was adjudicated under MCL 333.7411; MSA 14.15(7411) and he was placed on probation. On the basis of the assets Hawkins disclosed in his probation report, the Wayne County prosecutor's office became suspicious that he was living well beyond his legitimate income as a retired Chrysler factory worker. The forfeiture unit of the Wayne County Prosecutor's office supplied this information to the Oakland County Narcotics Enforcement Team (NET), which began investigating Hawkins. This investigation ceased after surveillance by NET as well as the State Police revealed nothing unusual except for heavy traffic in and out of the claimants' house and the presence of many expensive automobiles.

Subsequently, the State Police referred an informant named Randy Ulmer to West Bloomfield Police Officer Jerome Sharpe. Ulmer indicated that he had seen a large amount of cocaine in the

basement of claimants' house. On the basis of this information, NET and Sharpe executed a search warrant for claimants' West Bloomfield home on May 9, 1989. The search revealed, among other items, weapons, a suspected drug ledger, and a great amount of cash, some of which had a residue of cocaine. A specially trained canine unit also indicated that traces of cocaine were present in areas throughout the house and in one car belonging to the claimants. This search resulted in the present forfeiture proceedings, which were instituted on May 10, 1989.[1]

Before trial, the parties reached a comprehensive stipulation regarding the tracing of assets in this case. Robert Hawkins stated that he had worked for Chrysler Corporation for sixteen years. He further stated that he had owned rental properties in Detroit since he was nineteen years old, as well as a beer and wine store from 1978 to 1986. Hawkins explained that his income resulted from these sources plus some gambling profits and loans that he made. In addition, claimants alleged that they had received $2 million as the result of a personal injury lawsuit in the Macomb Circuit Court. The lawsuit allegedly stemmed from a 1983 incident when Margaret Wilson, an insurance agent from Chicago, became upset after Pamela Hawkins told her she was not interested in the insurance Wilson was selling. Wilson allegedly hit Pamela, who then fell over a banister and down some stairs. Claimants stated that Pamela was pregnant at the time and later had an abortion

[1] A federal criminal prosecution was also initiated against Robert Hawkins as a result of Ulmer's statements and the search of the claimants' house. According to claimants' brief, Robert Hawkins was ultimately convicted of possession with intent to distribute cocaine, possession of firearms in the course of a drug trafficking crime, and being a felon in possession of firearms. He was sentenced to a federal prison, where he currently resides.

because she thought her doctor, Dr. Lall, told her that something may have been wrong with the fetus as a result of the fall. The Hawkinses filed a lawsuit against Wilson in the Macomb Circuit Court on October 11, 1985, and were represented in that suit by attorney Alvin Brazzell. They later settled the suit with Wilson for $2 million, a substantial amount of which was delivered in cash.[2] Brazzell abruptly left his practice in February 1987 and, for reasons unknown to this Court, was incarcerated in a federal prison at the time of trial.

The trial court found claimants' lawsuit against Wilson to be nothing more than a money-laundering scheme. Judge Talbot ultimately ordered forfeiture of the West Bloomfield home, the cash found therein, jewelry, weapons, cars, a computer and printer, a boat, property located in Florida, and several different bank accounts, annuities, and life insurance policies. Most of the property forfeited was located in Oakland County. Claimants raise a number of issues on appeal.

ISSUE I

Claimants first argue that the court erred in ordering forfeiture of all the assets except for the Lincoln, the Tiffany, and the Bayliner boat because those are the only items covered by a seizure order or arrest warrant. Claimants contend that the trial court had no jurisdiction over nonseized assets and, therefore, those assets should have been returned to claimants. However, pursuant to MCL 333.7522(a); MSA 14.15(7522)(a), seizure without process may be made where it is incident to an arrest or a search warrant. Here, the previously

_____

[2] The court records apparently reflect that the settlement amount was $750,000.

issued search warrant included many of the items referred to by claimants. Therefore, those items did not need to be listed again on a seizure order. The property not included in the search warrant was subsequently seized with process by seizure orders and orders freezing assets. Consequently, the circuit court had jurisdiction to proceed with this case under § 7522.

Claimants assert that the trial court erred in ordering forfeiture of an annuity policy despite the fact that it was never named in any filed complaint nor made the subject matter of a seizure warrant or order freezing assets. Contrary to claimants' argument, a June 1, 1989, order freezing assets included two annuities. In addition, on the basis of the order freezing assets, settlement negotiations, and its seizure during the execution of the search warrant, it is clear that claimants had notice before trial that the asset was subject to forfeiture. Notice regarding the court's alleged lack of jurisdiction with regard to the annuities should have been raised before trial. By leaving the matter to the time of trial, claimants waived jurisdiction of the policies to the court.

Claimants argue that the trial court lacked jurisdiction over property located in Florida. We agree. Michigan courts have jurisdiction only over land situated within its territorial borders. MCL 600.751; MSA 27A.751; *Stewart v Eaton,* 287 Mich 466; 283 NW 651 (1939). Any complaint to forfeit claimants' realty located in Florida should be filed with the Florida courts that have jurisdiction over that property.

ISSUE II

Claimants argue that the trial court erred in denying their motion to change venue to Oakland

County because all the realty and personal property forfeited was located either in Oakland County or outside the State of Michigan. However, assuming the trial court did err in denying the motion, reversal is not warranted. Michigan's venue provisions are nonjurisdictional. MCL 600.1601; MSA 27A.1601.

### ISSUE III

Claimants argue that the court erred in its rulings with regard to several discovery matters. Claimants first argue that the trial court erred in denying basic discovery. For example, they state that the trial court erred in not requiring the people to answer an interrogatory requesting that the people set forth their various theories under which each item was claimed to be forfeitable. However, the people did respond, indicating that forfeiture was sought on theories that referred to the items as controlled substances proceeds, facilitators, or containers under MCL 333.7521; MSA 14.15(7521). The trial court properly found that the prosecutor could argue alternative theories. MCR 2.111(A)(2). In addition, claimants state that the court erred in not requiring the prosecutor to produce all documents concerning any criteria used by the prosecutor in bringing, prosecuting, or settling cases under the forfeiture act. We agree with the trial court that this information was not relevant. Accordingly, we find no abuse of discretion. *Eyde v Eyde,* 172 Mich App 49, 54; 431 NW2d 459 (1988). Moreover, we fail to see how claimants were prejudiced. MCR 2.613(A).

Claimants next argue that the trial court erred in issuing for the people "secret" subpoenas with no notice to the claimants. Claimants refer to subpoenas that stated that "due to a continuing

criminal investigation, notice of this Subpoena is not to be given to any named party." One subpoena was issued to Pamela Hawkins' doctor, Dr. Chitranjan Lall. Claimants argued that, as a result of this unfair tactic, they were foreclosed from asserting the doctor-patient privilege. Similar subpoenas were issued to First Federal of Michigan and Shearson, Lehman, Hutton without notice to claimants. Claimants contend that they were prejudiced in preparing for this case because they never received notice of these subpoenas.

Claimants were entitled to notice of service of any discovery requests on witnesses. MCR 2.107(A); MCR 2.305(A)(1); MCR 2.306(B)(1). Such notice is necessary to any party before discovery may be had in order for the opposing party to assert any objection or move for a protective order to prohibit the production of any materials otherwise not subject to discovery. The conduct complained of was reprehensible. Nevertheless, we find that the action was not taken wilfully to prejudice claimants, but was taken for reasons involving the ongoing criminal investigation involving claimants. Further, Dr. Lall's testimony was kept out of evidence at trial after claimants asserted the doctor-patient privilege. Therefore, no prejudice resulted in that regard. MCR 2.613(A). Further, claimants do not suggest that the prosecutor was not entitled to the information from First Federal of Michigan or Shearson, Lehman, Hutton, nor do they claim that they were prejudiced by the prosecutor's receipt of the information. These subpoenas were utilized to supplement financial documents that were in the prosecutor's possession as a result of the confiscation of records from claimants' residence. Therefore, we find that reversal is not warranted on this basis.

Claimants contend that the court erred in refus-

ing to require the people's witnesses, including
Randy Ulmer and various police officers, to re-
spond to inquiries during deposition and trial re-
garding their backgrounds and addresses. Claim-
ants argue that Ulmer was the only witness who
allegedly had firsthand knowledge of a claimed
violation of the Public Health Code by Robert
Hawkins and that his credibility was at issue.
Therefore, claimants argue that the information
was relevant. We find that the trial court did not
abuse its discretion in refusing to compel such
discovery, because the line of inquiry was not
relevant. *Sucoe v Oakwood Hosp Corp,* 185 Mich
App 484; 462 NW2d 780 (1990). We note that the
cases claimants cite are distinguishable because
the claimants in this case had the names of the
witnesses and could cross-examine them with re-
gard to other information in order to determine
their credibility. We fail to see how claimants were
prejudiced as a result. See also *People v Pleasant,*
69 Mich App 322; 244 NW2d 464 (1976).

Claimants argue that the trial court erred in not
requiring the prosecution to identify and produce
each and every document that it intended to offer
in evidence at trial as well as other evidence of
narcotics trafficking that would sustain forfeiture
of the Florida property. The prosecution, however,
indicated that a determination had not yet been
made regarding what documents it intended to
offer but that all documents were available for
claimants' inspection. Therefore, we find no abuse
of discretion in that regard. *Eyde, supra.* Further,
because we have decided that the Florida property
was improperly forfeited, we need not address the
second issue.

Claimants argue that the trial court abused its
discretion in denying their motion in limine to
strike the people's witness list. Claimants contend

that the motion should have been granted because the people failed to provide a witness list two months before the date set for completion of discovery, as mandated for civil cases by Third Judicial Circuit local court rules. See Wayne Circuit LCR 2.301. Here, however, there was apparently no date set for completion of discovery, nor was there any order entered compelling a witness list. Therefore, we find no abuse of discretion. *Dean v Tucker,* 182 Mich App 27, 32; 451 NW2d 571 (1990).

Moreover, we note that there are various factors the trial court must consider in determining discovery sanctions. See factors listed in *Dean,* pp 32-33. Although the people did not provide a witness list until one week before trial, that tardiness does not appear to be wilful, and claimants apparently never provided a witness list to the people. Further, we find that claimants failed to establish prejudice because they speak in vague and general terms of unknown witnesses, but fail to specify who the witnesses are and how claimants were prejudiced other than in general and conclusory terms regarding the preparation of their defense. *Id.,* p 34. Many of the major witnesses, including Randy Ulmer, were deposed and apparently listed in the prosecution's answer to claimants' interrogatory asking the prosecution to identify each person the people might call as a witness at trial. Claimants had notice of the importance of the individuals and what information they had to offer. Accordingly, although we do not condone the behavior of the parties, we find no abuse of discretion.

ISSUE IV

Claimants argue that the trial court erred in

denying them an evidentiary (*Franks*)[3] hearing to
determine the validity of the search warrant.
Claimants contend that the court erred in ruling
that the validity of the search warrant had previ-
ously been decided in the federal court and that
collateral estoppel prevented the trial court from
redetermining the issue. Claimants argue that it is
improper for this Court to apply crossover estoppel
to preclude the claimants from challenging the
validity of the search warrant. Claimants argue
that this is so because there is no mutuality be-
tween the charging parties in the two cases, be-
cause the federal court hearing the criminal case
was required to apply a different burden of proof,
and because claimant Robert Hawkins was not
given a full or fair opportunity to litigate the issue
in the federal forum.

Collateral estoppel, as a means of judicial econ-
omy, precludes the relitigation of an issue in a
subsequent and different cause of action between
the same parties where the prior proceeding ended
in a final judgment and the issue was (1) actually
litigated, and (2) necessarily determined. *People v
Gates,* 434 Mich 146, 154; 452 NW2d 627 (1990). It
is necessary to establish that the same parties
were involved in both proceedings. *Id.,* p 155.
Further, we must consider whether the party
against whom collateral estoppel is asserted has
had a full and fair opportunity to litigate the
issue. *Id.,* pp 156-157. Crossover estoppel involves
issue preclusion in a civil proceeding following a
criminal proceeding and vice versa. *Id.,* p 155.

The prior proceeding resulted in a final judg-
ment. Further, the same parties were involved.
The federal prosecution and the prosecution in
this case are essentially the same party, albeit of

---

[3] *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667
(1978).

different governments. *Id.,* p 156. We also conclude that claimants had a full and fair opportunity to litigate the issue. Robert Hawkins was the only claimant who was involved in the prior proceeding. However, his interests should have been adequate to protect the interests of the other claimants. Finally, the issue was actually litigated and necessarily determined because the trial court in the federal action clearly ruled on the merits of the motion. Accordingly, we find that the trial court properly applied collateral estoppel with regard to this issue. Therefore, we need not address whether claimants are entitled to a *Franks* hearing.

ISSUE V

Claimants argue that the prosecution failed to prove by a preponderance of the evidence that the assets were subject to forfeiture, and that the trial court therefore erred in ordering forfeiture.

Michigan law provides that anything of value that can be traced to an exchange for a controlled substance is subject to forfeiture under MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f). *In re Forfeiture of United States Currency,* 164 Mich App 171, 178; 416 NW2d 700 (1987). Forfeiture proceedings are in rem civil proceedings, and the party bringing the action must prove its case by a preponderance of the evidence. *In re Forfeiture of 719 N Main,* 175 Mich App 107, 114; 437 NW2d 332 (1989). In order for an asset to be ordered forfeited, the trial court must find that there is a substantial connection between that asset and the underlying criminal activity. In contrast, property that has only an incidental or fortuitous connection to the unlawful activity is not subject to forfeiture. *In re Forfeiture of $5,264,* 432 Mich 242, 262; 439 NW2d 246 (1989).

The trial court did not clearly err. MCR 2.613(C); *In re Forfeiture of $5,264, supra,* p 260. Contrary to claimants' argument, we do not believe that a connection with a specific incident of drug dealing must be shown for each asset; rather, the assets need only be traceable to drug trafficking. In the case at bar, the prosecution relied on the theory that Robert Hawkins, a retired factory worker, was a drug trafficker and that, on the basis of his unexplained increase in net worth from approximately 1983 to 1989, most of the assets later acquired by claimants were associated with drug dealing. The people presented evidence that Hawkins was in fact a drug dealer. Further, the people established that claimants had an exceedingly large income and amount of assets beyond what could be legitimately accounted for. Although claimants apparently had legitimate sources of income as well, they could not possibly account for their immense wealth. We find incredulous claimants' explanation that the acquisition of their extensive assets was made possible by their receipt of a substantial cash payment for a personal injury claim. We agree with the trial court that the Macomb County lawsuit was fraudulent. Accordingly, there was sufficient evidence to demonstrate a substantial connection between drug trafficking and the property in this case.

### ISSUE VI

Claimants argue that the trial court erred in ordering forfeiture of property belonging to Pamela Hawkins through joint tenancy or tenancy by the entireties, because she was an innocent owner whose property rights may not be diminished because of the conduct of another owner.

The controlled substances act provides that

property owned by another is not subject to forfeiture where the owner lacks knowledge of the drug activity. MCL 333.7521(1)(d)(ii) and (f); MSA 14.15(7521)(1)(d)(ii) and (f). See also *In re Forfeiture of $5,264, supra,* p 260. In the case of joint ownership of assets, the state may forfeit only the ownership interest of the noninnocent owner. *In re Forfeiture of $53,* 178 Mich App 480, 486; 444 NW2d 182 (1989).

The trial court found that any property Pamela Hawkins claimed as her individual property or property owned jointly with her husband was subject to forfeiture pursuant to a joint enterprise theory. Again, we find no clear error. MCR 2.613(C); *In re Forfeiture of $5,264, supra,* p 260. The evidence established that Pamela Hawkins enjoyed the substantial wealth her husband earned and it is logical to assume that Mrs. Hawkins was aware that the income was not derived from legitimate sources. Most importantly, because we found that the lawsuit regarding Mrs. Hawkins' injuries was fraudulent, it follows that Mrs. Hawkins knowingly participated in this scheme to launder money.

ISSUE VII

Claimants argue that the trial court erred in ordering forfeiture of assets traced by the prosecution to origins more than two years before May 10, 1989, the date of the initiation of the forfeiture action. Claimants refer to the two-year limitation period set forth in the Revised Judicature Act for actions for the recovery of a penalty or forfeiture based on a penal statute brought in the name of the people of this state. MCL 600.5809(2); MSA

27A.5809(2).[4] Claimants do not contend that the action was untimely. We note that the Michigan Legislature adopted forfeiture provisions modeled, in part, after the federal forfeiture statute. See n 4, *ante.* Therefore, we find persuasive federal case law interpreting the similar provisions. *In re Forfeiture of $53, supra,* p 486. In *United States v Milicia,* 769 F Supp 877, 884 (ED Pa, 1991), the court found that the forfeiture statute begins to run when the drug offense is complete. The court ultimately ruled that proceeds derived from or used to facilitate a drug offense after the effective date of the forfeiture statute were subject to forfeiture liability even though this date was beyond the period of limitation. *Id.,* pp 884-885. Claimants do not contend that any property acquired before the effective date of the forfeiture statute was forfeited. Accordingly, we find that no error occurred in this regard.

### ISSUE VIII

Claimants argue that the trial court erred in employing mistakes of fact and law in its decision.

[4] The people argue that § 5809 is inapplicable, that the prompt filing requirement of MCL 333.7523; MSA 14.15(7523) applies, and that, because the action was promptly filed, claimants' argument is without merit. Section 7523 provides that "[i]f property is seized pursuant to section 7522, forfeiture proceedings shall be instituted promptly." However, the prompt filing requirement refers to the time an action must be commenced *after* seizure. In support of our conclusion that the two-year period of limitation is applicable, we note that the Michigan Legislature adopted our forfeiture provisions modeled, in part, after the federal forfeiture statute. *In re Forfeiture of $5,264, supra,* pp 255-257. The federal forfeiture act provides for forfeiture actions to be filed promptly after seizure. 21 USC 881(b). Nevertheless, the federal courts apply the five-year general period of limitation for forfeiture actions. *United States v One Parcel of Real Property Known as 2401 S Claremont, Independence, Missouri,* 724 F Supp 670, 673 (WD Mo, 1989). Because the two statutes are in pari materia and can be construed harmoniously, they shall be. *Gooden v Transamerica Ins Corp of America,* 166 Mich App 793, 804; 420 NW2d 877 (1988).

Claimants first contend that the trial court incorrectly concluded that the prosecution could rely on a net-worth theory while not having to find that the assets in this case were traceable to any specific drug transaction. We disagree. The drug forfeiture act requires that the property be traced to drug dealing by a substantial connection. *In re Forfeiture of $5,264, supra,* p 262. As discussed above, a connection to a specific incident need not be shown. Here, the incident Ulmer testified to, together with the enormous income and assets beyond what claimants could legitimately have, provides a substantial connection to narcotics activity.

Further, claimants argue that factual references regarding Robert Hawkins' involvement in drug dealing were also not supported by the record. However, the testimony of Randy Ulmer, together with the "weight sheet" that was found in claimants' house, was sufficient evidence to show that Robert Hawkins was a drug trafficker.

Claimants contend that the trial court made inconsistent findings regarding the credibility of informant Randy Ulmer. Ulmer's testimony, when reviewed as a whole, was certainly questionable. However, we cannot say it was not credible, especially where the trial court had a better opportunity to evaluate the witness. The trial court could properly find Ulmer credible, although he had been impeached, because he explained the inconsistencies. Further, the trial court could properly find that Ulmer had no bad personal feelings against claimants although he expected a percentage of the assets forfeited.

Finally, claimants assert that the trial court, in making its findings of fact, referred to matters, such as newspaper articles, not admitted into evidence. We disagree. While noting a specific article

regarding attorney Alvin Brazzell's federal conviction, the trial court also noted that it was basing its decision on only the evidence Brazzell offered at trial.

### ISSUE IX

Claimants argue that the trial judge erred in not recusing himself despite his clear bias and partiality against claimants or claimants' counsel. We find that the trial judge did not abuse his discretion in denying claimants' motion for recusal or disqualification. *Law Offices of Lawrence J Stockler, PC v Rose,* 174 Mich App 14, 23; 436 NW2d 70 (1989). Disqualification is appropriate when a judge cannot impartially hear a case, including when the judge is personally biased or prejudiced for or against a party or attorney. MCR 2.003(B)(2). An actual showing of prejudice is required before a trial judge will be disqualified. *Mourad v Automobile Club Ins Ass'n,* 186 Mich App 715, 731; 465 NW2d 395 (1991). The party who challenges a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Arnholt v Arnholt,* 129 Mich App 810, 817; 343 NW2d 214 (1983).

Claimants brought three motions for recusal based on bias and prejudice. However, because claimants failed to provide a transcript from the second motion and failed to bring the third motion before the chief judge of the trial court, we will not address them. *Nye v Gable, Nelson & Murphy,* 169 Mich App 411, 413; 425 NW2d 797 (1988); MCR 2.003(C)(3)(a); *Law Offices of Lawrence J Stockler, PC, supra,* p 23. The first motion was based on various rulings made against claimants by the trial court and the trial judge's allegedly unusual and close relationship with the prosecutor

and his staff. Claimants raise only the latter issue on appeal.

In regard to this issue, claimants refer to a note delivered by the prosecutor's investigator to the trial judge. However, the investigator was merely relaying a message from the court reporter to the judge stating that she had to catch a bus. Apparently, the investigator just happened to be sitting closest to the judge. Claimants also refer to the prosecutors' "admission" that they act as "runners and law clerks for the trial judge." However, claimants have seen fit to add the words "for the trial judge," which alters the meaning of the statement. The prosecutors explained numerous times that they had to act as runners and clerks for their own office because of a lack of staff. As a result, the prosecutors stated that their positions necessitated numerous trips to the courtroom and file drawers. We find no abuse of discretion.

### ISSUE X

Claimants argue that the trial court erred in ignoring its obligation to find a nexus or substantial connection between the subject assets and specific violations. We have already addressed this issue above.

### ISSUE XI

Claimants argue that they were denied a fair trial as a result of the trial court's unreasonable treatment of them, their counsel, and their witnesses before and during trial. Claimants assert that the trial judge demonstrated his bias by his comments, rulings, questioning of the witnesses, and conduct in general.

As one example of the trial judge's alleged prej-

udice, claimants point to a letter sent by Judge Talbot to the federal government regarding an "opportunity to serve at the federal level in a position" helping to fight the war on drugs. Claimants point out that the judge kept a running "tally" of the amount of assets he had forfeited. However, we note that he was required to keep such a tally pursuant to MCL 333.7524a; MSA 14.15(7524a). Moreover, the fact that the trial judge has a personal ambition to fight the "war on drugs" does not mean that he would decide a case unfairly.

Further, a review of the trial judge's questioning of witnesses leads us to believe that the judge was merely attempting to clarify testimony and elicit additional helpful information to aid in his role as factfinder. We note that a trial judge has more discretion to question witnesses during a bench trial than during a jury trial, and we do not find the questioning in this case to be improper. See *In re Forfeiture of $53, supra,* p 497; *Law Offices of Lawrence J Stockler, PC, supra,* p 24; *People v Meatte,* 98 Mich App 74, 78; 296 NW2d 190 (1980).

Because this case involved no jury, concern over the effect of the judge's comments and conduct did not exist. Nevertheless, a judge's comments and conduct can indicate a possible bias. A trial judge may comment about cases in the absence of a jury. *Ferrell v Vic Tanny Int'l, Inc,* 137 Mich App 238, 248; 357 NW2d 669 (1984). The issue of bias or prejudice should come to this Court's attention only when a litigant can show that the trial judge's views controlled his decision-making process. *Id.*

After carefully reviewing the entire record in this case, we conclude that reversal is not warranted on this basis. It appears that throughout the trial the atmosphere was rather tense as a

result of the bickering between counsel and between claimants' counsel and the trial court. It appears to us that claimants' counsel provoked the trial court with their comments and conduct in general. In addition to being disrespectful to the court in many instances, claimants' counsel resorted to attacking a prosecutor by apparently stating that her conduct "typified the basest kind of projection as described in psychiatric literature." This type of conduct was uncalled for. The trial judge also appeared to be agitated by the tactics of claimants' counsel, such as what appeared in the judge's eyes to be attempts to create appellate parachutes and reliance on what clearly appears to be a fraudulent lawsuit as an explanation for some of claimants' extensive assets. As a result, the judge was apparently becoming frustrated and was losing his patience. Although the judge may not have displayed the utmost courtesy, being courteous is the ideal, not the requirement. What is required is that the parties receive a fair trial. Here, claimants have failed to show that the judge's views controlled his decision-making process. Accordingly, we find that a new trial is not warranted on this basis.

### ISSUE XII

Claimants argue that the trial court erred in denying their request for a jury trial. We disagree. The constitutional right to trial by jury under Const 1963, art 1, § 14 applies to civil actions at law that were triable by a jury at the time the constitutional guarantee was adopted. *Wolfenden v Burke,* 69 Mich App 394, 399; 245 NW2d 61 (1976), citing *Conservation Dep't v Brown,* 335 Mich 343; 55 NW2d 859 (1952). Because there was no right to a jury trial in equitable matters, matters in equity

are not entitled to jury trials unless so preserved
or created by the Legislature. *Wolfenden, supra,* p
399; *Thomas v Steuernol,* 185 Mich App 148, 155-
156; 460 NW2d 577 (1990). The forfeiture act does
not indicate a right to a jury trial in forfeiture
actions. Because a forfeiture action is equitable in
nature, we find that the Legislature's failure to
grant the right to a jury trial in forfeiture matters
makes the right unavailable.

### ISSUE XIII

Claimants argue that the trial court erred in
ordering forfeiture of accounts owned by Rashawn
Hawkins, Rodericka Hawkins, Ryan Hawkins, and
Robert Hawkins, Jr., because there was no evi-
dence linking the accounts to drug transactions.
Claimants argue that the trial court erred when it
asserted that the minor children's claims were
purely "derivative" without any finding of consent
or knowledge by the minor claimants. We find that
the trial court did not clearly err in finding that
the accounts should be forfeited. See MCR 2.613;
*In re Forfeiture of $5,264, supra,* p 260. This case
was based on a net-worth theory. It was the con-
tention of the prosecutors that claimants were
living well beyond their legitimate income. Be-
cause there was no adequate explanation for the
$25,000 in each child's account other than being
proceeds of drug transactions, forfeiture was war-
ranted. Claimants cannot circumvent forfeiture
laws merely by depositing the drug proceeds in
their children's accounts.

Claimants further argue that the trial court
erred in forfeiting the children's accounts because
they date back to more than two years before this
action was commenced and, therefore, the two-
year period of limitation was violated. However, as

discussed above, we find that no error occurred in this regard.

Affirmed in part and reversed in part.

GRIFFIN, P.J., concurred.

DOCTOROFF, J. *(dissenting).* I respectfully dissent from the majority's conclusion with regard to issue II. Although I agree that Michigan's venue provisions are not jurisdictional, I would reverse because the trial court erred in denying claimants' motion for a change of venue. In *In re Forfeiture of Suitcases & Miscellaneous Items,* 193 Mich App 132; 483 NW2d 650 (1992), this Court held that, although both the Macomb and the Oakland Circuit Courts had jurisdiction over the property at issue, venue was proper in the Macomb Circuit Court. The panel reasoned:

> According to MCL 600.1605; MSA 27A.1605, venue involving claims concerning the recovery of personal property properly lies in the county in which the subject of the action is situated. Property taken or detained pursuant to forfeiture proceedings is deemed to be in the custody of the seizing agency. MCL 333.7523(2); MSA 14.15(7523)(2). Therefore, because custody of the cash, gold, and jewelry is deemed to be with Chesterfield Township, venue of the proceedings concerning these items must lie in Macomb County. [*Id.,* p 135.]

In the present case, the seizing authority was an Oakland County police task force, and the majority of the property seized is located in Oakland County. Accordingly, venue must lie in Oakland County. I would hold that the trial court clearly erred in denying claimants' motion to change venue to Oakland County, vacate the judgment, and remand to the Oakland Circuit Court for a

new trial. Furthermore, I urge the claimants to seek review of this issue of venue in the Michigan Supreme Court.

I also dissent from the majority's conclusion with regard to issue XI that the trial court's conduct did not deny claimants a fair trial.

During the course of the trial, the trial court engaged in extensive questioning of witnesses. The trial court's questioning of the people's witnesses appears to have been intended to elicit testimony favorable to the people's position, whereas the trial court's questioning of claimants' witnesses seems to have been intended to intimidate the witnesses. The trial court made sarcastic comments regarding some of claimants' witnesses, further indicating its bias against claimants. In many instances, the trial court treated claimants or their attorneys with contempt. I disagree with the majority's conclusion that the letter sent by Judge Talbot to the federal government does not indicate that Judge Talbot would unfairly decide a case. The letter calls into question the judge's true reasons for denying claimants' motions to change venue and challenging jurisdiction over the Florida property. The trial court's actions support claimants' assertion that Judge Talbot was biased or predisposed against claimants and their attorneys and that the trial court was influenced by personal interest. I would hold that the trial court's conduct denied claimants a fair trial.