# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CLEMONS, Minors.

UNPUBLISHED
December 28, 2017

No. 338177
Genesee Circuit Court
Family Division
LC No. 16-133700-NA

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right from an order terminating his parental rights to his three children, JMC, JDC, and JWC, under MCL 712A.19b(3)(b)(*i*) (physical or sexual abuse), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm), and (n) (conviction of serious criminal offense). We affirm.

## I. FACTS

In November 2016, respondent entered JMC's room[1] while she was sleeping and touched her buttocks and vaginal area over her spandex pants. Respondent took a video of himself doing so on his cell phone. His motivation was apparently retribution against his wife, the mother of the children, for talking with other men. JMC was not aware of the incident until the next day when her mother showed her the video. Ultimately, respondent pleaded guilty to fourth-degree criminal sexual conduct.

At the termination hearing, respondent stated that he recorded himself touching JMC "[b]ecause [] at multiple times found my wife talking to [JMC's] biological father, and that day was another one of those days, and, in my drunken stupidity, I did it." Respondent added that he recorded the touching "[s]o that [his wife] could see it because I know she checks my phone every night." Respondent also indicated that the incident with JMC was intended to stop his wife from speaking with other men.

---

[1] Respondent is the biological father of JDC and JWC, and signed an affidavit of parentage with respect to JMC.

Respondent's wife explained that when respondent found out in September 2016 that she was talking with JMC's father, respondent "pushed me, started yelling at me, calling me names." She said that "when he pushed me down, he grabbed a hold of my leg and started dragging me down my hallway all the way to my front door, and then kicked me out of my house with nothing on but just my pants and my shirt, and called me names." She affirmed that respondent had been violent toward her "a good three times within the year prior to this," elaborating that "[h]e hasn't physically hurt me. He's yelled at me and stuff. It always started with yelling. I'd swing back if he would swing at me though." The trial court inquired how respondent had been physically violent, and she explained: "He would push me down. He's drug me all the way through my house before, in the bedroom, all the way down the hallway, outside. He kicked me out of the house. That's how a lot of our fights went." She affirmed that respondent had hit her in the past.

Respondent's wife also said that he was "superior" and explained that she meant:

I was lower than him. I've never been equal to him. He made all the rules. I had to abide by them. If I didn't, we fought. That's how it was. I mean it was pretty much like an olden day relationship where I stay at home with the kids, all that stuff, and he went to work and he made all the money and I didn't even have any access to the bank accounts or nothing like that because whenever I did, we'd fight because something got messed up, you know. That's why I say he was superior because of the fact that he really was superior. He was. He knows this, and I don't think he would deny it. I'm sure that he wouldn't deny it because he knows it.

Much of this testimony was in response to the trial court's questions. The trial court asked the attorneys if they had any follow-up questions and respondent's attorney then asked about incidents where the wife may have struck respondent with a belt and baseball bat.

The trial court found that petitioner had introduced clear and convincing evidence to terminate respondent's rights and that termination was in the children's best interests. The court explained that prior to the hearing, it had been "skeptical of the request to terminate [respondent's] rights as to [JDC and JWC]," that it had assumed respondent's motive for sexually assaulting JMC was sexual gratification, and that its opinion changed when it learned that respondent's motive was "an escalation of power and control tactics after violence against mother no longer worked." The trial court further explained that "while there is little chance that father would sexually abuse the boys for sexual gratification, there is a high risk that he would hurt them to maintain power and control. The risk is even higher given father's propensity to escalate the harm, both in degree and kind." In conclusion, the trial court found "that [respondent] poses an unacceptable risk to the children and that there is no way to remediate that risk to an acceptable level within a reasonable time. As such, petitioner has proven grounds for termination pursuant to subsections (b)(i), (g), (j) and (n) of MCL 712A.19b(3)." The trial court also concluded that termination was in the children's best interests after weighing the bond between respondent and the children against the "risk for serious physical and psychological harm," and determining that the risk of harm was "the greater concern."

## II. DISCUSSION

Respondent argues that the trial court terminated his parental rights on the basis of domestic violence, that the domestic violence was a "new or different" circumstance than what was set forth in the petition, and that his due process rights were violated when his rights were terminated based on this "new or different" circumstance without petitioner filing a supplemental petition.

This Court reviews de novo questions of constitutional law, including "[w]hether a child protective proceeding complied with a respondent's right to due process . . . ." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "A natural parent possesses a fundamental interest in the companionship, custody, care, and management of his or her child, an element of liberty protected by the due process provisions in the Fourteenth Amendment of the United States Constitution and article 1, § 17, of the Michigan Constitution." *Frowner v Smith*, 296 Mich App 374, 381; 820 NW2d 235 (2012). "The essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal." *Hughes v Almena Twp*, 284 Mich App 50, 69; 771 NW2d 453 (2009).

We conclude that respondent received adequate notice that there would be testimony regarding domestic violence. The original petition asserted that the children came within the trial court's jurisdiction because

> [t]he parent or other person legally responsible for the care and maintenance of the child(ren), when able to do so, neglected or refused to provide proper or necessary support, education, medical, surgical, or other care necessary for the child(ren)'s health or morals, or he/she has subjected the child(ren) to a substantial risk of harm to his or her mental well-being, or he/she has abandoned the child(ren) without proper custody or guardianship.

The petition also alleged that the children came within the trial court's jurisdiction because "[t]he home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent, guardian, nonparent adult, or other custodian, is an unfit place for the child(ren) to live." Additionally, the petition contained a request for termination of respondent's parental rights on the grounds that "[t]he child or sibling of the child has suffered physical injury or physical or sexual abuse . . ." and the "parent's act caused the physical injury or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*i*).

The quoted statute provides a ground for termination if there is reasonable likelihood that a child will suffer injury or abuse; it does not require a reasonable likelihood of another incident of *sexual* abuse. As a result, respondent was on notice that he would have to rebut evidence that tended to establish that he might harm his daughter and/or his sons in the future, i.e., evidence of prior physical abuse against his wife and the reasons behind it. Additionally, the petition indicated that "[t]his family has had prior contacts with CPS on the following dates: 6/28/2005 and 10/10/2013. These contacts were made due to allegations of Improper Supervision, Threatened Harm, Substance Abuse, Physical Abuse, and Failure to Protect." This provided respondent additional notice that he may have to defend against evidence related to "threatened

harm" or "physical abuse." Because respondent was provided notice that he might have to face testimony concerning domestic abuse, which would have a bearing on the "reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future," MCL 712A.19b(3)(b)(*i*), as well as "threatened harm" or "physical abuse," we conclude that respondent was provided adequate notice of the possibility of being faced with testimony regarding domestic violence.

Respondent argues that domestic violence was a new or different circumstance, which would require petitioner to file a supplemental petition. We conclude that the domestic violence was not a "new or different circumstance."

Petitioner asserted, and the trial court found, that grounds existed under MCL 712A.19b(3)(b)(*i*), (g), (j) and (n). MCL 712A.19b(3)(b)(*i*) provides that termination is appropriate when the "child or a sibling of the child has suffered physical injury or physical or sexual abuse" and that "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Termination is proper under MCL 712A.19b(3)(g) if the petitioner proves by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Termination is proper under MCL 712A.19b(3)(j) if the petitioner proves by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Termination is proper under MCL 712A.19b(3)(n) if the petitioner proves by clear and convincing evidence that the respondent has been convicted of an offense specified in MCL 712A.19b(3)(n)(*i*),[2] and "the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child[.]"

The trial court elicited testimony from respondent's wife detailing the manner in which respondent would react when he became angry, particularly at her. She recounted respondent yelling at her, and forcing her out of the house. This testimony shed light on respondent's actions when faced with a situation that angered him, and assisted the trial court in finding that there was "a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*i*). This testimony also provided evidence demonstrating that there was a reasonable likelihood that the children would be harmed by respondent if returned to him, § (3)(j), and that "termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child," MCL 712A.19b(3)(n). Further, because the testimony demonstrated respondent's tendency toward being violent, it provided evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that

---

[2] This includes violations of sections "316, 317, 520b, 520c, 520d, 520e, or 520g of the Michigan penal code, 1931 PA 328, MCL 750.316, 750.317, 750.520b, 750.520c, 750.520d, 750.520e [fourth-degree criminal sexual conduct], and 750.520g." MCL 712A.19b(3)(n)(*i*).

the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Therefore, the domestic violence testimony was "related to," *In re Gilliam*, 241 Mich App 133, 137; 613 NW2d 748 (2000), grounds for termination alleged in the petition as well as the reason the trial court assumed jurisdiction. Because of this, we conclude that the domestic violence was not a "new or different circumstance."

Respondent next argues that the trial court's questions violated MRE 614(b) and his right to due process. Generally, whether a judge has pierced the veil of impartiality is determined by looking at the totality of the circumstances to ascertain whether "it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). However, "a trial judge has more discretion to question witnesses during a bench trial than during a jury trial[.]" *In re Forfeiture of $1,159,420*, 194 Mich App 134, 153; 486 NW2d 326 (1992). This Court reviews de novo "[w]hether a child protective proceeding complied with a respondent's right to due process" because it is a question of law. *In re Williams*, 286 Mich App at 271.

MRE 614(b) provides that a trial court "may interrogate witnesses, whether called by itself or by a party." The Supreme Court has explained that "the central object of judicial questioning should be to clarify." *Stevens*, 498 Mich at 173. Accordingly, "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Id*. at 173-174. Further, "[a] trial court has greater discretion in questioning during a bench trial." *In re Jackson*, 199 Mich App 22, 29; 501 NW2d 182 (1993).

Here, petitioner elicited testimony that respondent would "lose his temper too fast," and that he "liked to be very mean with his words." Petitioner also elicited testimony that his marriage had been "rocky," that on the night of the incident respondent had "cuffed [his wife] upside [the] head," and that one month prior to the incident, he had forced her out of the house and later forced her onto her knees and "took his thing out of his pants and started slapping me in the face and stuff with it." The trial court inquired about specifics regarding domestic violence as follows:

> [*The court*]: Any violence towards you?
>
> [*Witness*]: Yes
>
> [*The court*]: How many occasions?
>
> [*Witness*]: I really don't know. Every time he got mad at me over — I'd have to say there was a good three times within the year prior to this.
>
> [*The court*]: Can you describe for me what happened in those three times? I know this is hard for you, but —
>
> [*Witness*]: Our last big fight was because of the fact that he had found out I was talking to [JMC's] father and I had talked to a couple of other people. I'm not a saint. I messed up.

[*The court*]:  How was he violent toward you?

[*Witness*]:  He hasn't physically hurt me.  He's yelled at me and stuff.  It always started with yelling.  I'd swing back if he would swing at me though.  I know I did.  I didn't like him hit - I did like to fight him.  So, I didn't want to fight, and I didn't like him being angry with me.

[*The court*]:  So, he was physically violent toward you?

[*Witness*]:  Not always.

[*The court*]:  Okay.  You said three times within the year prior to the 17th.

[*Witness*]:  Yes.

[*The court*]:  Okay, so when he was physically [violent], how was he physically violent?  What did he do to be violent?

[*Witness*]:  He would push me down.  He's drug me all the way through my house before, in the bedroom, all the way down the hallway, outside.  He kicked me out of the house.  That's how a lot of our fights went.

[*The court*]:  Okay.  Did he ever hit you?

[*Witness*]:  Yes.

[*The court*]:  Had the police ever responded to any of these incidents?

[*Witness*]:  I never told anybody.  I took pictures, you know, as if I would one day tell somebody.

According to the trial court, respondent's wife seemed "very reluctant" to testify as to the domestic violence.  The trial court's questions, then, were designed to "produce fuller and more exact testimony or elicit additional relevant information," *Stevens*, 498 Mich at 173, regarding respondent potentially being violent toward his children.  We therefore conclude that the questioning was proper.

Respondent also argues that this questioning violated his right to due process.  "The essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal." *Hughes*, 284 Mich App at 69.  Respondent had adequate opportunity to cross-examine the witness regarding the domestic violence, including asking whether she had struck respondent with a belt and other objects.  Additionally, there is no evidence that the trial court was acting partially, as its questions regarding domestic violence were "designed to clarify points and to elicit additional relevant evidence," *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 24; 436 NW2d 70 (1989).  Therefore, the trial court's questions did not violate respondent's right to due process.

Respondent next argues that the trial court's best-interest analysis was flawed. This Court reviews the trial court's decision on whether termination is in the best interests of the minor child for clear error. *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004). For a decision to be clearly erroneous, it must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App at 271. The reviewing court gives due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

The best-interests determination focuses on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation and quotation marks omitted). Respondent's father and aunt testified that respondent had a bond with all the children. Additionally, respondent explained that he took care of the children financially. However, given respondent's actions in sexually assaulting JMC for revenge against his wife, there was no clear error in the determination that the children would be at a risk of harm if they stayed in respondent's custody. Further, JDC and JWC were both under the age of ten at the time of the termination hearing. Given the young ages of the two boys, they likely needed "permanency, stability, and finality," *id*., rather than being concerned about their own well-being in the aftermath of respondent's assault of JMC. Therefore, the trial court did not clearly err when it concluded that the best-interests analysis weighed in favor of termination.

Lastly, respondent argues that the trial court based termination solely on its insufficient best-interest analysis and violated respondent's due process rights because the analysis amounted to an unconstitutional procedure that stripped respondent of his parental rights without facts being admitted that demonstrated abuse toward the boys. The trial court followed the relevant procedures set forth in MCR 3.977(E). As part of that procedure, the trial court found that at least one statutory ground had been proven by clear and convincing evidence. *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003); *In re SLH*, 277 Mich App 662, 674; 747 NW2d 547 (2008). The trial court concluded that petitioner had proven the grounds for termination under MCL 712A.19b(3)(b)(*i*), (g), (j) and (n). MCL 712A.19b(3)(b)(*i*) provides that termination is appropriate when the "child or a sibling of the child has suffered physical injury or physical or sexual abuse" and that "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). Accordingly, it is "appropriate for a trial court to evaluate a respondent's potential risk to the other siblings by analyzing how the respondent treated another one of his or her children . . . ." *Id*.

In *In re Jenks*, 281 Mich App 514, 515; 760 NW2d 297 (2008), the respondent admitted in a plea that he sexually penetrated his stepdaughter. There, the "trial court found, by clear and convincing evidence, that [the] respondent had committed a sexual penetration of a half-sister of the minor children and that there was a reasonable likelihood that the minor children would suffer injury or abuse if ever placed in [the] respondent's custody." *Id*. at 515-516. This Court rejected the respondent's challenge to the trial court's determination:

The record clearly established that [the] respondent sexually abused the minor children's half-sister; [the] respondent does not dispute this. And the statute clearly encompasses such conduct. Further, considering the nature of [the] respondent's criminal sexual conduct with the other child, which included penetration, the trial court did not clearly err in determining that there is a reasonable likelihood that the minor children would suffer injury or abuse in the foreseeable future if placed in [the] respondent's home. Therefore, the trial court did not clearly err in finding that this ground for termination was established by clear and convincing legally admissible evidence. [*Id*. at 517-518.]

This Court did not engage in an analysis of whether the respondent was likely to commit similar offenses against his other children, or whether the other children had been abused. Rather, it considered the "nature of [the] respondent's criminal sexual conduct with the other child" in determining that the trial court did not clearly err when it found clear and convincing evidence to terminate the respondent's rights under MCL 712A.19b(3)(g). *In re Jenks*, 281 Mich App at 519. Similarly, the trial court here considered that respondent had admitted to sexually assaulting JMC. It took into account testimony that respondent had committed domestic violence, that the violence was a means for dominance and control, and that the sexual assault was an escalation of the violence and dominance he sought to assert. Considering that respondent stated that he touched JMC in response to his wife talking to other men, the trial court did not clearly err when it found that petitioner had proven by clear and convincing evidence the ground under § (3)(b)(*i*). Because petitioner need only prove one ground for termination, *In re JK*, 468 Mich at 210, we decline to address the remaining grounds.

Respondent also challenges the trial court's best-interests determination. Respondent was present for both the jurisdictional trial as well as the termination hearing, and therefore had an "opportunity to be heard." *Hughes*, 284 Mich App at 69. Finally, although there were no facts introduced tending to show that respondent had abused the boys, testimony was introduced that demonstrated how respondent had dealt with situations that made him angry and ultimately led him to sexually assaulting the boys' half-sister. Respondent's behavior indicated that the boys could be placed in harm's way, and respondent had the opportunity to rebut testimony regarding his violent tendencies. Thus, respondent's due process rights were not violated.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood