*In re* FORFEITURE OF $53

Docket No. 106956. Submitted May 9, 1989, at Detroit. Decided July
17, 1989.

Fifty-three dollars, a 1987 Jeep automobile and several miscella-
neous items of property were ordered forfeited by the Wayne
Circuit Court, Michael J. Talbot, J., pursuant to the provisions
of the Public Health Code relating to controlled substances.
The items were seized from the possession of Basil Wyrick
when, in the course of a routine stop made by two police
officers for an observed traffic violation by Wyrick, narcotics
fell from the automobile's bumper-mounted spare tire when one
of the officers stepped on the bumper. The automobile's certifi-
cate of title and registration listed Basil Wyrick and Patricia
Wyrick Johnson as owners. Wyrick and Johnson appealed from
the order of forfeiture, seeking a return of the automobile.

The Court of Appeals *held:*

1. Under § 7521(1)(d)(ii) of the Public Health Code, a convey-
ance, including an aircraft, vehicle or vessel used or intended
for use to transport, or in any manner to facilitate the trans-
portation of, a controlled substance for the purpose of the illicit
sale or receipt of the controlled substance is subject to forfei-
ture. However, a conveyance is not subject to forfeiture by
reason of any act or omission established by an owner thereof
to have been committed or omitted without that owner's knowl-
edge or consent. Thus, where the conveyance is owned by two
individuals, one of whom uses the conveyance for the illicit
transportation of a controlled substance without the other
owner's knowledge or consent, forfeiture is limited to the
extent of the noninnocent owner's interest in the conveyance.

2. The other claims raised on appeal are without merit.

Affirmed in part, reversed in part, and remanded for a new
trial limited to the issue of whether Johnson is an innocent co-
owner and, if so, the extent of her interest which shall not be
subject to forfeiture.

REFERENCES

Am Jur 2d, Appeal and Error §§ 4 *et seq.,* 761; Forfeitures and
Penalties §§ 18, 19, 40-43; Statutes §§ 145 *et seq.*

See the Index to Annotations under Drugs and Narcotics; Fines,
Penalties, and Forfeitures.

1. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — APPEAL — COURTS — JURISDICTION.

Jurisdiction properly lies in the Court of Appeals to review an order of forfeiture issued by a trial court pursuant to the provisions of the Public Health Code relating to controlled substances (MCL 333.7521; MSA 14.15[7521]; MCR 7.203[A]).

2. APPEAL — MOOT ISSUES.

Courts generally will not entertain moot issues or decide moot cases; an issue is moot when circumstances render it impossible for the reviewing court to grant any relief; the Court of Appeals will entertain cases that are technically moot if the issues involved are of public significance and are likely to recur in the future and yet evade judicial review.

3. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting the statute; if the language used is not ambiguous, judicial interpretation is not warranted; where, however, the statutory language is of doubtful meaning a court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose.

4. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — CONVEYANCES — OWNERS.

A conveyance, including an aircraft, vehicle or vessel used or intended for use to transport, or in any manner to facilitate the transportation of, a controlled substance for the purpose of the illicit sale or receipt of the controlled substance is subject to forfeiture; however, a conveyance is not subject to forfeiture by reason of any act or omission established by an owner thereof to have been committed or omitted without that owner's knowledge or consent; thus, where the conveyance is owned by two individuals, one of whom uses the conveyance for the illicit transportation of a controlled substance without the other owner's knowledge or consent, forfeiture is limited to the extent of the noninnocent owner's interest in the conveyance (MCL 333.7521[1]; MSA 14.15[7521][1]).

5. FORFEITURES AND PENALTIES — AUTOMOBILES — CONTROLLED SUBSTANCES — PROBABLE CAUSE.

The government, to justify forfeiture of a vehicle allegedly used to transport controlled substances, must show that probable cause exists to believe the vehicle was used to transport or facilitate the transportation of controlled substances and that

probable cause continued to exist at the time suit was commenced.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Andrea L. Solak,* Chief, Special Operations, and *Marshall E. Goldberg,* Assistant Prosecuting Attorney, for the people.

Patricia Wyrick Johnson and Basil Wyrick, in propria persona.

Before: HOOD, P.J., and BEASLEY and SHEPHERD, JJ.

SHEPHERD, J. Claimants Patricia Wyrick Johnson and her son, Basil Wyrick, appeal as of right from a February 9, 1988, order granting the Wayne County Prosecutor's petition for forfeiture of a 1987 Jeep and other miscellaneous property and United States currency. Claimants seek a return of the 1987 Jeep. We reverse and remand to the trial court for further proceedings on Patricia Wyrick Johnson's claim to the 1987 Jeep. In all other respects, the order is affirmed.

I

FACTS

At the bench trial, Detroit Police Officer Billy Newton testified that he and his partner stopped a 1987 Jeep on September 18, 1987, at 3:45 P.M. after observing the driver make an illegal turn. The driver was claimant Basil Wyrick.

While his partner approached the driver's door, Officer Newton went to the rear curb side of the Jeep. One of the three passengers alighted from the Jeep, but Officer Newton asked him to wait inside the Jeep until the investigation was over.

At that point, Officer Newton rested his foot on the rear bumper of the Jeep and a white coin envelope of the type used for narcotics fell out from the area where a spare tire rested in the middle of the bumper. A further search of the spare tire boot revealed a total of fifty packets of suspected narcotics.

Basil Wyrick and the other passengers were arrested at that time. Besides the suspected narcotics and the Jeep itself, the officers seized from the Jeep or from Basil Wyrick's person $53, two gold rings, a watch, a stereo cassette radio and a ten-inch television.

The only other evidence presented by the prosecution was the laboratory analysis of the narcotics which was admitted by stipulation of claimants' attorney. With regard to the Jeep, the prosecutor sought forfeiture on two grounds: (1) the Jeep was a container for controlled substances and (2) the Jeep was being used to convey narcotics to different points.

One claimant, Patricia Wyrick Johnson, testified in opposition to the forfeiture. Claimants' attorney informed the court that the defense was that Officer Newton's testimony regarding how he discovered the narcotics in the Jeep was not credible. Further, it was argued that the Jeep could not be forfeited because Johnson was an innocent owner and her son, Basil Wyrick, was only an equitable owner.

After Johnson was called from the hallway where she had been sequestered, Johnson testified that she had just overheard a man, who was later identified as Officer Newton, tell another person in the hallway that he had just lied. According to Johnson, she and her son, Basil Wyrick, were listed as the Jeep's co-owners on the title and registration in order to help her son establish a

credit rating for the future. Johnson considered herself to be the "principal owner" of the Jeep because she made the $1,500 down payment and was making all subsequent installment payments. Johnson also testified that she had purchased insurance for the Jeep, but that her son was not listed in the policy.

Johnson claimed that she used the Jeep to drive to work and that she was a teacher in the Detroit public schools. She did not recall how her son obtained the Jeep on the day of his arrest, but speculated that her son picked up the Jeep from the school and that she probably obtained a ride home from her husband. According to Johnson, her son attended classes at the same school where she taught and would sometimes get the Jeep from her when he finished classes in mid-afternoon. Johnson disavowed any knowledge of the narcotics found in the Jeep.

The trial court found that Officer Newton's testimony was credible, that the Jeep had been lawfully stopped for a traffic violation, and that the narcotics were discovered accidentally as a result of Officer Newton placing his foot on the bumper, rather than as a result of a search. All the property, except for one of the two gold rings, was ordered forfeited. The one ring was not forfeited because Johnson testified that the ring was given to Basil Wyrick as a gift. With regard to the Jeep, the trial court rejected Johnson's "innocent owner" defense based on case law indicating that a joint owner cannot claim the defense where the other co-owner is not innocent. For reasons to be discussed *infra,* we conclude that the trial court applied an incorrect legal test in rejecting Johnson's defense.

II

MOOTNESS

On appeal, the only relief sought by claimants is a return of the Jeep to "its owner." The prosecutor responds that this Court lacks jurisdiction to hear this appeal because the order of forfeiture has allegedly been executed and the property disposed of. Hence, it is claimed, the relief sought cannot be granted.

A similar issue was addressed in *In re Forfeiture of $28,088 of United States Currency,* 172 Mich App 200, 204; 431 NW2d 437 (1988). This Court rejected the prosecutor's jurisdictional argument and held that it had jurisdiction under MCR 7.203(A) to review the order of forfeiture. The Court further held that the real concern encompassed by the prosecutor's argument was one of mootness. 172 Mich App 204. We agree.

Under MCR 7.203(A), we hold that we have jurisdiction to review the February 9, 1988, forfeiture order. As for mootness, an important test in Michigan is whether an event occurs which renders it impossible for the reviewing court, if it should decide in favor of the party, to grant relief. 172 Mich App 204. Further, this Court will entertain cases that are technically moot if the issues involve areas of public significance and are likely to recur again and yet evade judicial review. *In re Wayne Co Election Comm,* 150 Mich App 427, 432; 388 NW2d 707 (1986), lv den 425 Mich 882 (1986).

Here, the lower court record contains no factual development on the disposition of the Jeep and claimant Johnson has not had an opportunity to raise alternative avenues of relief, i.e., to seek a recovery of the proceeds from the purported sale of the Jeep. Without a hearing in the trial court on

the remedies available to Johnson in the event that the order of forfeiture has been executed, we decline to dismiss for mootness. 172 Mich App 205. Further, the issue raised by Johnson pertaining to the "innocent owner" defense is one of public significance and likely to recur. Unless a claimant obtains a stay of the forfeiture order, this issue will likely arise again without judicial review. Accordingly, we choose to review Johnson's claim.

As for Basil Wyrick's claim, however, we note that he did not assert an innocent owner defense and, hence, would not be entitled to relief on this defense. The burden is on the owner to establish this defense. MCL 333.7521(1)(d)(ii) and (f); MSA 14.15(7521)(d)(ii) and (f), discussed *infra* in section III of this opinion. See also *United States v Lots 12, 13, 14, & 15, Keeton Heights Subdivision, Morgan Co, Kentucky,* 869 F2d 942, 947 (CA 6, 1989).

III

THE "INNOCENT OWNER" DEFENSE

Claimant Johnson asserts that the Jeep should be returned because she was an innocent owner. By contrast, the prosecutor contends that the "innocent owner" defense is inapplicable because the other co-owner, Basil Wyrick, had guilty knowledge of the prohibited use of the Jeep on the day of its seizure with narcotics. Both parties referred to *People v One 1979 Honda Automobile,* 139 Mich App 651; 362 NW2d 860 (1984), as support for their respective positions. The controversy in *One 1979 Honda Automobile* revolved around the "innocent owner" defense established by § 7521(1)(d)(ii) of the Public Health Code, which provided that the following property is subject to forfeiture:

(d) A conveyance, including an aircraft, vehicle, or vessel used or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of property described in subdivision (a) or (b), but:

* * *

(ii) A conveyance is not subject to forfeiture by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent. [MCL 333.7521(1)(d)(ii); MSA 14.15(7521)(1)(d)(ii).]

The Court in *One 1979 Honda Automobile* looked to the decisions in other jurisdictions to construe § 7521(1)(d)(ii). The Court ultimately established a broad rule:

We agree with the jurisdictions addressing the issue which have held that, *in the case of joint ownership, the guilty knowledge of one co-owner that the conveyance or vehicle is involved in a prohibited transaction subject to forfeiture is sufficient to provide a basis for such forfeiture. In re One 1976 Dodge Van,* 429 So 2d 718, 719 (Fla, 1983). Accord, *In the Matter of 1976 Blue Ford Pickup,* 120 Ariz 432, 435; 586 P2d 993, 996 (1978); *Amrani-Khaldi v State, supra* [575 SW2d 667 (Tex Civ App, 1978)] (based on community property laws). Obviously, so too is the situation where the co-owner actually uses the vehicle to effectuate the prohibited activity. *In re One 1976 Dodge Van, supra.* Indeed, the case relied upon by [the co-owner], *State v One Ford Van, Econoline,* 154 NJ Super 326; 381 A2d 387 (1977), for the proposition that forfeiture of an innocent person's vehicle would not serve any valid purpose, and that forfeiture statutes should be construed in favor of the person whose property is to be seized, actually noted that "[w]here [an owner] allows the vehicle to be freely used by another who knowingly permits it to be used or uses it to transport contraband the exception does not apply, regardless of

the owner's innocence". 154 NJ Super 335; 381 A2d 392. [*Id.,* pp 655-656. Emphasis added.]

Based on our review of the decisions in other jurisdictions in light of the language of the Michigan statute, we do not agree that the holdings in other jurisdictions reflect our Legislature's intent in enacting § 7521(1)(d)(ii).

A. *The decisions in other nonfederal jurisdictions.* The decisions in other jurisdictions do not agree on how to interpret "innocent owner" defenses in forfeiture actions. In *People v Garner,* 732 P2d 1194 (Colo, 1987), the Supreme Court of Colorado held that a public nuisance statute that exempted property from forfeiture if the court found that possession of the property was not unlawful and "the owner" was not a party to the creation of the nuisance required forfeiture where there was at least one owner of the property (a vehicle) who participated in or acquiesced in the prohibited use that led to the vehicle being declared a public nuisance. However, the *Garner* Court noted that their holding conflicted with the interpretations given to similar forfeiture statutes in two other jurisdictions. *Id.,* p 1197, n 3. See *State v Shimits,* 10 Ohio St 3d 83; 461 NE2d 1278 (1984) (statute providing that if an "innocent owner" exists, then forfeiture "shall not apply" interpreted as requiring law enforcement authorities to return vehicle to an owner if the court finds that an owner is an "innocent owner"), and *People ex rel Barra v Wiebler,* 127 Ill App 3d 488; 82 Ill Dec 353; 468 NE2d 1007 (1984) (statute requiring owner to show that he "did not know, and did not have reason to know" that vehicle was to be used in the commission of the offense expresses legislative intent to provide a joint tenant with the opportunity to prove he should not be charged with another joint tenant's guilty knowledge).

With regard to the cases relied on in *One 1979 Honda Automobile* by this Court, we do not find that those decisions persuasively demonstrate how to construe the Michigan forfeiture statute. For instance, in *One 1976 Dodge Van, supra,* the District Court of Appeals of Florida held only that the guilty knowledge of one co-owner is a sufficient basis to justify a forfeiture where the vehicle is titled in the alternative between a father and son. Subsequently, in *In re Forfeiture of 1978 BMW Automobile,* 524 So 2d 1077 (Fla App, 1988), the District Court of Appeals noted that the Florida legislature had amended the statute, at least where a husband and wife are co-owners, to prohibit foreclosure where one of them is a reasonably innocent owner. As for other nonspousal co-owners, the District Court of Appeals chose to certify the question to the Florida Supreme Court concerning whether forfeiture is permitted where one co-owner is innocent and the title to the vehicle is not stated in the alternative, i.e., uses the words "and" or the words "and/or" rather than the word "or." The Arizona case of *In the Matter of 1976 Blue Ford Pickup, supra,* took a similar approach to the "innocent owner" defense by looking to how the joint tenancy is recorded in the title and the legal consequences of that recording. A subsequent decision of the Arizona Court of Appeals has questioned whether the *Blue Ford Pickup* decision is still good law in light of the Arizona Supreme Court's concerns for the rights of an "innocent owner." See *In the Matter of 1979 Dodge Van,* 150 Ariz 25; 721 P2d 683 (1986).

In sum, while there appears to be some support in the decisions of other nonfederal jurisdictions for the holding in *One 1979 Honda Automobile,* the decisions conflict and we do not find them persuasive on the question of how to construe the

Michigan statute. In particular, we reject the notion that the language of a title to a vehicle necessarily controls the rights of the owner under the Michigan forfeiture statute.

B. *The "innocent owner" defense in the federal courts.* Since this Court has looked to the federal forfeiture statute where similarities exist as an aid in construing the Michigan forfeiture statute, we next turn to a consideration of the "innocent owner" defense in the federal courts. See *In re Forfeiture of United States Currency,* 166 Mich App 81; 420 NW2d 131 (1988).

At the times relevant to this case, the federal forfeiture statute, like the Michigan statute, contained a specific provision, 21 USC 881(a)(4), that permitted a forfeiture of a conveyance, including a vehicle, that was used in any manner to facilitate the transportation, sale or receipt of controlled substances. However, the only statutory "defense" provided by the federal statute for the "innocent owner" pertained to those situations where the conveyance was unlawfully in the possession of a person other than the owner. 21 USC 881(a)(4)(B).

An alternative "innocent owner" defense was, however, judicially recognized in light of dicta in *Calero-Toledo v Pearson Yacht Leasing Co,* 416 US 663; 94 S Ct 2080; 40 L Ed 2d 452 (1974), suggesting that serious constitutional questions might arise in certain factual instances. Based on that dicta, the traditional rule that the innocence of the owner of property was not a defense to a forfeiture was judicially modified in some federal courts where the claimant-owner was uninvolved in and unaware of the wrongful act, and also did all that could reasonably be expected to prevent the proscribed use of the property. See *United States v One 1985 BMW,* 696 F Supp 336 (ND Ill, 1988); *One Blue 1977 AMC Jeep v United States,*

783 F2d 759 (CA 8, 1986) (declined to rule on whether the limited defense should be recognized where the facts did not support the defense); *United States v Lots 12, supra* (declined to address the constitutional question where the applicable statute, as amended, 21 USC 881(a)(7), established an "innocent owner" defense where the proscribed act was committed without the owner's knowledge or consent).

It seems unlikely that the dicta in *Calero-Toledo* will continue to form a basis for a judicially recognized defense in the federal courts where conveyances, including vehicles, are forfeited in view of the Anti-Drug Abuse Amendments Act of 1988, which added the following statutory defense in 21 USC 881(a):

> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9), except that—
>
> *       *       *
>
> (C) *no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.* [Emphasis added.]

In light of this background, however, we now turn to a consideration of what our Legislature intended when it adopted the "innocent owner" defense in § 7521(1)(d)(ii) in 1978 as part of the Public Health Code. See 1978 PA 368.[1]

---

[1] Prior to 1978 PA 368, the controlled substances act of 1971 governed the forfeiture of property. Former § 55 of the act, MCL 333.355; MSA 18.1070(55), also contained an innocent owner defense

C. *The "innocent owner" defense of MCL 333.7521(1)(d)(ii); MSA 14.15(7521)(1)(d)(ii).* In construing this statute, the following principles of statutory construction will be considered. On the one hand, it is said that forfeitures are not favored in the law, particularly where the Legislature carves out an exception to the scope of the forfeiture provision and, hence, the statute is given a strict interpretation in favor of the person whose property is subject to forfeiture. *One Ford Van, Econoline, supra,* p 390. On the other hand, our Legislature has expressly mandated in MCL 333.1111(2); MSA 14.15(1111)(2) that the Public Health Code is to be liberally construed "for the protection of the health, safety, and welfare of the people of this state." *In re Forfeiture of $5,264,* 432 Mich 242; 439 NW2d 246 (1989).

The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting the statute. If the language used is not ambiguous, judicial interpretation is not warranted. *Id.,* p 248. Where, however, the statutory language is of doubtful meaning a court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *Id.,* p 248. It is also the duty of the court to give the presumption of constitutionality to a statute and construe it accordingly unless the contrary clearly appears. *People v One 1973 Pontiac Automobile,* 84 Mich App 231, 233; 269 NW2d 537 (1978).

Here, the central issue revolves around the proper construction of the term "the owner" in § 7521(1)(d)(ii). The statutory provision is ambiguous because it does not address those situations

where the owner established that the prohibited act was done without his knowledge or consent.

where there are co-owners. Since "the owner" is not defined in the statute, we turn to a common understanding of the term. *Mobil Oil Corp v Dep't of Treasury,* 422 Mich 473, 484; 373 NW2d 730 (1985).

"Owner" means: "The person in whom is vested the ownership, dominion, or title of property; . . . He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases." Black's Law Dictionary (4th ed), p 1259. By comparison, a common understanding of the term "joint owners" is "two or more persons who jointly own and hold title to property, e.g., joint tenants and also partners and tenants in common." *Id.,* p 1260. In its most comprehensive sense, "joint owners" embraces all cases where the "property in question is owned by two or more persons regardless of the special nature of their relationship or how it came into being." *Id.* By contrast, a "sole owner" is defined as one where "no one else has any interest in the property as owner" *Id.*

In light of these common definitions, it appears that the phrase "the owner" contemplates that there is a sole owner, yet, this would not be a reasonable interpretation of the statute since it is clear that more than one person can have an interest in property and that the interest may take on different forms, i.e., legal title or even equitable title. See *State v One Ford Van, Econoline,* 143 NJ Super 512; 363 A2d 928 (1976). Reading the language of § 7521(1)(d)(ii) that "a conveyance is not subject to forfeiture by reason of any act or omission established by *the owner* thereof to have been committed or omitted without *the owner's* knowledge or consent," a reasonable construction of the provision is that it establishes a defense personal to *each* owner to the extent of that

owner's interest. Such a construction furthers the clear legislative intent to protect the truly innocent owner, while providing a powerful deterrent to and a means of combatting illegal narcotics transactions.

Our holding is further buttressed by a consideration of the well-settled rule that each provision of an act is to be read with reference to every other provision so as to produce a harmonious whole. *In re Forfeiture of $5,264, supra,* p 251. The act here establishes an in rem civil proceeding where the state has the burden of proving that the property is subject to forfeiture by a preponderance of the evidence. *People v United States Currency,* 158 Mich App 126, 130; 404 NW2d 634 (1986). Its object is, however, quasi-criminal in character since it penalizes for the commission of an offense against the law. *In re Forfeiture of United States Currency, supra,* and see *In re Forfeiture of One 1983 Cadillac,* 176 Mich App 277; 439 NW2d 346 (1989). In order for a claimant to have standing to challenge the forfeiture, MCL 333.7523(1)(b); MSA 14.15(7523)(1)(b) instructs that the claimant must have an interest in the property. Further evidence of our Legislature's intent to focus on the claimant's property interest arose when our Legislature added the following "innocent owner" defense in 1982 for property coming within the broad classification of "any thing of value" in § 7521(1)(f):[2]

> To the extent of the interest of *an owner,* a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission

[2] Although this provision was patterned after 21 USC 881(a)(6), it lacks the clarity of the federal statute inasmuch as it appears to use "an owner" and "the owner" interchangeably while the federal statute provides "to the extent of the interest of *an owner,* by reason of any act or omission established by *that owner." In re Forfeiture of $5,264, supra,* pp 256-257, n 12.

that is established by *the owner* of the item to
have been committed or omitted without the own-
er's knowledge or consent. [MCL 333.7521(1)(f);
MSA 14.15(7521)(1)(f). Emphasis added.]

The subsection of the statute expressly dealing
with the more specific classification of "convey-
ances" also indicates an intent to focus on the
property interest of a claimant inasmuch as
§ 7521(1)(d)(iv) subjects a forfeiture of a conveyance
encumbered by a bona fide security interest to
"the interest of the secured party who neither had
knowledge of nor consent to the act or omission."

To construe § 7521, as a whole, as intending to
require the forfeiture of all interests in jointly
owned property if that property is a conveyance
where one of the co-owners has guilty knowledge,
while subjecting a forfeiture to the interests of
"an" or "the" owner where the property can be
characterized as "any thing of value" would ren-
der the statute inherently inconsistent. This is
particularly so in light of our Supreme Court's
recent interpretation of "any thing of value" as
including real property. *In re Forfeiture of $5,264,
supra.* We are satisfied that the Legislature would
not have intended all of the innocent owners of
fractional interests in real property to lose their
entire interest merely because one co-owner of the
property used it to facilitate a drug transaction.
Giving a reasonable construction to the statute as
a whole, we find no indication that our Legislature
intended to treat conveyances differently than
other property of value, such as real property,
where the property is jointly owned.

To summarize, we conclude that § 7521(1)(d)(ii)
was intended to establish a separate defense for
*each* claimant who has a personal interest in the
property as an owner. Hence, where the prosecu-

tion commences an action against a conveyance that is used for unlawful narcotics activity, the forfeiture of the res is subject to the interest of a co-owner who proves that the proscribed act was done without his or her knowledge or consent, express or implied. The state may only forfeit the ownership interest of the noninnocent owner. If, for example, the innocent owner has a fifty percent interest in the vehicle, the property may be sold and the proceeds divided equally between the state and the innocent co-owner.

The trial court here applied an incorrect legal test in rejecting claimant Johnson's challenge to the forfeiture of the Jeep. We, therefore, remand to the trial court to make specific findings on (1) whether the proscribed act of using the Jeep to transport narcotics was done without her knowledge and consent and (2) the extent of Johnson's interest in the Jeep.

## IV

### REMAINING ISSUES

The claimants raise several additional issues that we need not address for the reason that no supporting authority is cited in support of their arguments. See *People v United States Currency, supra,* and *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n,* 159 Mich App 510, 520-521; 407 NW2d 31 (1987), lv den 429 Mich 876 (1987) (issues not considered where either not raised below or given cursory treatment in the appellant's brief with little or no citation of supporting authority).

In any event, we would reject the issues on the merits. First, a criminal prosecution is not a prerequisite to a forfeiture proceeding. MCL 333.7522; MSA 14.15(7522). The proceeding is brought

against the property, with the government's burden being to show that probable cause existed to believe the vehicle was used to transport or facilitate the transportation of controlled substances and that probable cause continued to exist at the time suit was commenced. *In re Forfeiture of One 1985 Mercedes Benz,* 174 Mich App 203, 205; 435 NW2d 426 (1988). Secondly, the credibility of Officer Newton's testimony as to how he discovered the narcotics was a question of fact for the trial court, as the trier of fact, to resolve. We will not resolve it anew. Since the trial court did not clearly err in finding that Officer Newton discovered the narcotics accidentally, we uphold that finding. MCR 2.613(C), and see *In re Forfeiture of $5,264, supra,* p 260; *Kroll v Crest Plastics, Inc,* 142 Mich App 284, 288-289; 369 NW2d 487 (1985), lv den 423 Mich 859 (1985).

As for claimants' argument of judicial bias premised on the trial court's remarks during the bench trial, this issue was not raised below by means of a motion for disqualification and, hence, is not properly before us. MCR 2.003. Further, the record before us indicates that the questions asked by the trial court were designed to clarify points or to expand upon the path of inquiry in order to assist the court in its role of factfinder. It was not improper to do so. MRE 614. While this Court may remand for further proceedings before a different judge where warranted by the circumstances, the circumstances of this case do not indicate that a remand before a different judge is justified. *People v Evans,* 156 Mich App 68, 71-72; 401 NW2d 312 (1986). The error committed by the trial court here in rejecting Johnson's challenge to the forfeiture of the Jeep as an innocent owner was one of law. Claimants were not deprived of a fair trial.

In sum, we have rejected the prosecutor's claim

of mootness. We find merit in Johnson's contention that the trial court erred in rejecting her "innocent owner" defense. The case is remanded to the trial court for a new trial on the issue of whether Johnson is an innocent co-owner and on the extent of her interest. The trial judge shall make specific factual findings on whether Johnson proved this defense, specifically, whether the proscribed transportation of narcotics was done with her knowledge or consent (express or implied)[3] and, if so, whether Johnson proved the amount of her personal interest in the Jeep. Johnson shall have an opportunity on remand to make a claim, if supported by proper authority, for alternative avenues of relief in the event that the prosecutor executed the forfeiture order by disposing of the Jeep. In all other respects, the forfeiture order is affirmed.

Affirmed in part, reversed in part, and remanded. Jurisdiction is not retained.

[3] By "implied consent" we would suggest as an example the situation where a co-owner allowed the driver to transport narcotics on an earlier occasion. One could then imply that there was consent on the day in question even if there was no actual knowledge. We do not hold that giving unlimited use of the vehicle results in an implication that consent was given to use it for an illegal purpose.