# STATE OF MICHIGAN

# COURT OF APPEALS

---

HALYNA KALYNOVYCH,

        Plaintiff-Appellee,

v

IGOR KALYNOVYCH,

        Defendant-Appellant.

UNPUBLISHED
March 27, 2018

No. 338758
Oakland Circuit Court
LC No. 2012-802124-DM

---

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

This custody matter is returning to this Court after the case was remanded for a new evidentiary hearing regarding custody of the parties' minor son YK. *Kalynovych v Kalynovych*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket No. 321942). On remand, the trial court held a new evidentiary hearing and awarded sole legal custody of YK to plaintiff. The court ordered that YK would primarily live with plaintiff, but that defendant would have parenting time pursuant to a schedule determined by the court. Defendant appeals as of right, challenging the trial court's custody decision. We affirm.

To begin, we offer the following brief summary that was provided by this Court in its prior opinion in this case:

> Plaintiff and defendant first married in 1995 in Ukraine. Two children were born of that marriage, VK and YK. The parties divorced in Ukraine in 2008, but remarried in 2009. In 2010, the family left Ukraine and moved to Hamtramck. Plaintiff filed for divorce in 2012. After multiple substitutions of counsel, interpreters, and adjournments, the court held a two-day bench trial. Both parties were represented by counsel at the first day of the trial. However, on March 12, 2014, the trial court allowed the attorneys for both parties to withdraw. The trial court questioned the parties, who were the only witnesses, with the assistance of a translator. Because the parties had agreed that VK could live with defendant, the trial court made no findings regarding VK. Plaintiff was awarded sole physical and legal custody of YK. However, the actual divorce judgment awarded the parties joint legal custody of VK with sole physical custody to defendant. [*Kalynovych*, unpub op at 1.]

-1-

Defendant appealed, and while this Court rejected most of his challenges, the panel concluded that the factual findings made by the trial court were "insufficient to allow meaningful review." *Id*. at 7. This Court vacated the trial court's prior decision and remanded the matter for a new child custody hearing. *Id*. at 9. On remand, while the judge that had presided over the matter initially rejected defendant's request that she disqualify herself from the case, the judge ultimately disqualified herself on her own motion, and a new judge was appointed to preside over the matter. Defendant was represented at various times by different attorneys, but by the time the custody hearing began, his then-most recent attorney had withdrawn, and he proceeded in *propria persona* for the first two days of the hearing. Between the second and third hearing dates, defendant obtained one attorney, and then replaced him with another, who represented defendant throughout the remainder of the hearing. After four days of testimony, the trial court issued a detailed opinion and order explaining its decision. Defendant appeals the ruling as of right.

## I. JUDICIAL BIAS

Defendant first contends that the trial court was biased against him, thereby denying him a fair hearing. We disagree.

To preserve a claim of judicial bias, an appellant must raise the issue via motion in the trial court. MCR 2.003; *In re Forfeiture of $53*, 178 Mich App 480, 497; 444 NW2d 182 (1989). At the outset of the custody hearing, defendant asked the presiding judge to disqualify herself from the matter, contending that the judge failed to consider or denied several of his motions. Thus, to the extent defendant's argument is based on this issue, the question is preserved. However, the majority of defendant's claims of purported bias are premised on decisions and comments made by the trial court during and after the custody hearing. Defendant never moved for disqualification based on any of these rulings or comments, and thus, to the extent the argument is premised on what occurred during and after the custody hearing, the issue is not preserved. Nevertheless, we shall address defendant's full argument on alleged judicial bias.

"When this Court reviews a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion; however, the applicability of the facts to relevant law is reviewed de novo." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009) (quotation marks omitted).

Defendant's brief on appeal cites a variety of cases discussing the requirements of due process generally, but eventually, he hones in on the issue of judicial bias.[1] Defendant also cites MCR 2.003(C)(1)(b). Under this court rule, disqualification of a judge is warranted if:

---

[1] It is somewhat notable that almost all of the cases cited at any length by defendant regarding the question of judicial bias are criminal cases discussing when a judge's conduct or statements may influence a jury and thereby deny a criminal defendant a fair trial. See, e.g., *People v*

The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 U.S. 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)(b).]

Defendant goes on to explain a number of circumstances that he believes demonstrate that the trial court was "less than impartial." We do not share in defendant's view of the circumstances.

"[A] party challenging the impartiality of a judge must overcome a heavy presumption of judicial impartiality." *Van Buren Charter Twp v Garter Belt, Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003) (quotation marks omitted). "In general, the challenger must prove a judge harbors actual bias or prejudice for or against a party or attorney that is both personal and extrajudicial." *Id*. "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong*, 248 Mich App at 597 (quotation marks omitted). "Repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice." *Id*. at 597-598 (citation omitted).

Defendant first contends that he filed several parenting time motions that were dismissed without being heard. Defendant fails to cite the particular motions at issue, and thus fails to properly present the issue on appeal. *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor and Merrill, Inc*, 267 Mich App 625, 640; 705 NW2d 549 (2005). That said, it does appear true that defendant, without the assistance of counsel, filed several motions that were not heard. But the record does not show that this was the result of judicial bias. A motion filed by defendant on September 10, 2015, was not certified by him as having been served on the opposing party, and likely was not heard for this reason. Defendant filed a motion on June 14, 2016, which contained allegations that plaintiff interfered with his parenting time. No response was filed to the motion. While this motion apparently was not heard, defendant refiled the same motion on July 26, 2016. Plaintiff did respond to the motion this time, and on August 3, 2016, the trial court granted the motion in part and denied it in part, explaining that the parenting time issues would be addressed at the evidentiary hearing. Thus, the motion was addressed by the trial court. Defendant filed another motion on September 20, 2016, which again alleged that plaintiff interfered with his parenting time. However, this motion was dismissed on September 29, 2016, due to improper service. On this record, the trial court's conduct in no way demonstrates bias.

Defendant next points to the fact that the trial court denied his repeated requests for a court-appointed attorney on the first day of the custody hearing. The Sixth Amendment does not provide a right to counsel in civil matters. *Turner v Rogers*, 564 US 431, 441; 131 S Ct 2507;

---

*Stevens*, 498 Mich 162; 869 NW2d 233 (2015). The relevancy of these cases to the present matter is fairly limited, given that this case does not involve a criminal jury trial.

180 L Ed 2d 452 (2011). Nor does the Due Process Clause of the Fifth Amendment require the provision of counsel in most instances. *Id.* at 442-443. Those limited circumstances generally only involve cases where a losing party faces the possibility of a loss of physical liberty. *Id.* Defendant offers no authority that would require the provision of appointed counsel in a proceeding such as that at issue here. Further, and as the trial court repeatedly informed defendant, he had been without counsel for several months before the custody hearing. He could have obtained counsel at any point, as he eventually did for the last two days of the hearing.[2] The trial court's rulings, which were entirely appropriate, do not demonstrate bias.

On the issue of bias, defendant next argues that hearsay was impermissibly allowed at the hearing. Even if true, defendant did not object to any evidence on hearsay grounds, and thus, no rulings were made by the trial court. While judicial rulings rarely, if ever, demonstrate judicial bias, *Armstrong*, 248 Mich App at 597-598, given the lack of any ruling, there is simply nothing in the record that could possibly demonstrate bias on the part of the trial judge.

Without citing to the record, defendant contends that he was repeatedly rushed during his presentation of evidence. After reviewing the record, there were some instances where the trial court asked defense counsel to move on from repetitive or irrelevant matters, or to refocus defendant on the questions being posed to him. But the trial court's comments and directions were clearly within its right to control the proceedings. See MRE 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to [1] make the interrogation and presentation effective for the ascertainment of the truth, [2] avoid needless consumption of time, and [3] protect witnesses from harassment or undue embarrassment."). The trial court's conduct did not demonstrate bias.

Defendant takes issue with the fact that the trial court did not agree with the recommendation of a guardian ad litem (GAL) appointed by the trial court. While defendant is likely disappointed that the trial court did not adopt the GAL's recommendation, it was the trial court, not the GAL, who was ultimately tasked with rendering a decision in this case. See MCL 722.23 (setting forth the best interest factors that control in custody matters, which are "to be considered, evaluated, and determined *by the court*") (emphasis added). Thus, the court had to evaluate and give an opinion on the factors; exercising these duties did not constitute bias or prejudice in and of itself. See *Armstrong*, 248 Mich App at 597-598.

Defendant's remaining arguments pertain to how the trial court resolved factual issues. Defendant contends that the trial court erred by finding that he had physically assaulted plaintiff in the past and that plaintiff was a credible witness. Plaintiff, however, testified to instances of abuse, and thus, there was an evidentiary basis for the court's ruling rather than one that was indicative of bias. With regard to the trial court's credibility determinations, it has long been

---

[2] On that note, it is somewhat telling that despite being adamant that the hearing could not continue until he was represented by counsel, defendant did not retain counsel to represent him during the nearly two-month long period that transpired between the first and second days of the custody hearing.

recognized that when a trial court is tasked with making factual determinations, "[g]reat weight is given to the determination of the trial judge, who is able to view the demeanor of the witness." *Storms v Storms*, 183 Mich App 132, 135; 454 NW2d 175 (1990). Thus, this Court generally defers to a trial court's credibility determinations. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). There is nothing in the record that would indicate that the trial court's credibility determinations were based on anything other than proper considerations. As explained, the trial court must come to an opinion regarding the matters before it, and this opinion, regardless of who it favors, cannot constitute bias. *Armstrong*, 248 Mich App at 597-598. In sum, defendant fails to demonstrate that the trial court was biased against him.

## II. CUSTODY FACTORS

Defendant next challenges the trial court's findings with respect to 10 of the 12 best-interest factors stated in MCL 722.23. We find no basis to disturb the trial court's decision.

> There are three different standards of review applicable to child custody cases. The clear legal error standard applies where the trial court errs in its choice, interpretation, or application of the existing law. Findings of fact are reviewed pursuant to the great weight of the evidence standard. In accord with that standard, this Court will sustain the trial court's factual findings unless the evidence clearly preponderates in the opposite direction. Discretionary rulings are reviewed for an abuse of discretion, including a trial court's determination on the issue of custody. [*Foskett v Foskett*, 247 Mich App 1, 4-5; 634 NW2d 363 (2001) (quotation marks and citations omitted).]

The best-interest factors that must be considered by the trial court are found in MCL 722.23(a) through (l):

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Of the 12 factors listed above, defendant only omits factors (a) and (g), which factors the trial court found neutral, from his appellate challenge.

With regard to MCL 722.23(b), "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any[,]" the trial court explained that while both parties loved YK, plaintiff was far more involved in his education and religious activities, and thus, this factor favored plaintiff. On appeal, defendant argues that this finding was erroneous because plaintiff could not remember the name of the church she attended with YK or the name of his doctor, calling into question plaintiff's credibility. This Court generally will not interfere with a trial court's credibility determinations. *Berger*, 277 Mich App at 707. Regardless, although plaintiff could not remember the name of YK's church, she detailed many facts regarding YK's religious education. Defendant, on the other hand, testified that he attended church when he could, and when asked to give more details, defendant did not wish to respond, questioning whether his religious involvement was "a requirement[.]" It was also clear from the testimony of both parties that plaintiff was the only parent involved in YK's medical care, although she could not remember the last name of his doctor.

Defendant also contends that the trial court ignored certain testimony regarding his involvement in YK's education. The testimony adduced at trial demonstrated that plaintiff was clearly more involved in YK's education than defendant. Defendant indeed testified that he and VK helped YK with his homework. But on the entire record, it was fairly apparent that plaintiff was much more involved in YK's education than defendant. The trial court did not need to explicitly state its consideration of every piece of evidence presented at trial. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). Defendant fails to demonstrate that the trial court's finding with respect to MCL 722.23(b) was against the great weight of the evidence.

Factor (c) considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the

laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that this factor favored plaintiff, explaining that defendant failed to pay child support under an existing support order, and that plaintiff was the only parent to take YK to medical appointments. Plaintiff also testified that she provided YK with food, clothing, and other material needs. On appeal, defendant does not challenge the accuracy of this evidence. Rather, he contends that the trial court erred by failing to consider that he had a steady source of income, and by failing to acknowledge defendant's testimony that he would do anything for his children. Again, the trial court need not explicitly state its consideration of every piece of evidence. *MacIntyre*, 267 Mich App at 452. Further, although it might be argued that defendant has the ability to provide for YK's material needs, it is essentially unrefuted that he has not paid child support as ordered, and that he has been entirely uninvolved in YK's medical care. It is not simply the ability to provide for a child's material needs, but a parent's disposition to do so that is relevant under MCL 722.23(c). While defendant's words indicated that he had such a disposition, his actions demonstrated the opposite. "[A]s oft noted, sometimes a person's actions speak louder than his words." *Secura Ins Co v Blotsky*, 182 Mich App 637, 642; 452 NW2d 899 (1990). The trial court's findings were not against the great weight of the evidence.

Factor (d) considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court found this factor was neutral, explaining that both parties had suitable homes, located near each other. Defendant argues that the trial court failed to address the desirability of maintaining continuity and the "appropriateness of maintaining the continuity with" VK. Defendant's argument is meritless because the "desirability of maintaining continuity" is not a factual determination to be made by the trial court, but rather, a value stated by our Legislature. See *Ireland v Smith*, 451 Mich 457, 465 n 8; 547 NW2d 686 (1996). Further, while VK currently lives with defendant, he is an adult who is no longer within the trial court's jurisdiction. See *Hayford v Hayford*, 279 Mich App 324, 327; 760 NW2d 503 (2008) (explaining that with regard to custody and parenting time determinations, the trial court's jurisdiction ends when the child reaches age 18). VK could choose to leave defendant's home at any point. He may also choose to have a relationship with YK outside of the confines of defendant's home. But nothing the trial court orders can control the relationship between VK and YK now that VK has reached the age of majority.

Factor (e) considers "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). "[T]he focus of factor e is the child's prospects for a stable family environment." *Ireland*, 451 Mich at 465. The trial court found this factor neutral, explaining that both parties were single and had no roommates, other than the fact that VK lived with defendant. Defendant contends that the trial court erred by focusing on the acceptability of the parties' respective homes rather than permanence. This is simply not true. The trial court appropriately considered the suitability of each party's home with regard to factor (d). The trial court's findings with respect to factor (e) appropriately explained YK's prospects for a stable family environment by noting that in both homes, he would reside only with family members. The trial court's finding that both parties were single explains that there is little prospect, at least at this time, of those family units being disrupted.

Defendant further argues that with respect to factor (e), the trial court should have considered the importance of keeping siblings together and the potentially devastating effect of

severing a sibling relationship. This argument is meritless, as the trial court did not sever any such relationship. Under the trial court's order, YK will continue to spend time with VK at defendant's home. Further, as was explained, VK is an adult who may choose to see YK at plaintiff's home. There was no evidence that plaintiff would refuse to allow VK to visit YK at her home if he wished.

Factor (f) considers the moral fitness of the parties. MCL 722.23(f). The trial court found this factor neutral, explaining that neither party abused alcohol or drugs, or was involved in illegal activity. Defendant argues that "[p]oor moral fitness is related to behaviors which the children know about." He contends that the trial court's findings focused on the "moral example" of the parties and not their fitness as a parent. The fact that neither parent engaged in the activities discussed by the trial court would seem relevant to their moral fitness. One could conclude that a parent who engages in illegal activity is not morally fit and that a parent who abuses alcohol or drugs, in some contexts, is not morally fit to parent. Thus, the lack of such behaviors would be a relevant consideration. To the extent that defendant believes other evidence was relevant to this factor, he does not point to any evidence that establishes plaintiff was not morally fit, or that he was superior in this regard. Defendant fails to demonstrate that this finding was against the great weight of the evidence.

Factor (h) considers "[t]he home, school, and community record of the child." MCL 722.23(h). With regard to this factor, the trial court explained that plaintiff was the only parent actively involved in YK's education, and that according to plaintiff, defendant did not assist YK with his homework or try to help him improve his grades. The trial court also explained that plaintiff had testified that YK was liked by his teachers and peers. On appeal, defendant argues that the trial court's findings were not accurate because defendant contradicted plaintiff's testimony regarding his involvement in YK's homework and other educational affairs. In this regard, the trial court clearly found plaintiff more credible than defendant. Again, we defer to the trial court's credibility determinations. *Berger*, 277 Mich App at 707. Defendant also argues that the trial court failed to consider that he owned a larger home than that rented by plaintiff. This is simply not relevant under factor (h). Factor (h) considers the home *record* of the child, not the comparable attributes of the structures in which each party resides. MCL 722.23(h).

Factor (i) is the reasonable preference of the child, if the child is old enough to express a preference. MCL 722.23(i). The trial court stated that it interviewed YK *in camera* and would consider his preference as the court deemed appropriate. Defendant argues that the trial court's finding was inappropriate because the trial court "was going to choose whether to consider the preference or not." Defendant seems to misread the trial court's opinion. The trial court did not state that it would choose whether to consider YK's preference, but rather, that it would consider his preference as it found appropriate. In other words, the trial court gave the factor consideration, but as part of its consideration of all of the factors, not as a single controlling factor. This is an entirely proper way to address factor (i). See *Maier v Maier*, 311 Mich App 218, 226-227; 874 NW2d 725 (2015) (explaining that the trial court "may consider the relative weight of the factors [stated in MCL 722.23] and is not required to give them equal weight"); *MacIntyre*, 267 Mich App at 458 ("The trial court need not violate the child's confidence by revealing that preference on the record."); *Treutle v Treutle*, 197 Mich App 690, 694-695; 495 NW2d 836 (1992) ("The child's preference does not automatically outweigh the other factors, but is only one element evaluated to determine the best interests of the child.").

Defendant also contends that this factor favored him because at the custody hearing, the GAL testified that YK preferred to live with defendant. Defendant's argument is meritless for several reasons. First, while the GAL did testify (against the trial court's wishes)[3] that YK preferred to live with defendant, this does not establish what was revealed during the trial court's *in camera* discussions with YK. Additional or different information may well have come to light that contradicted the GAL's statement. Second, the trial court may well have found that this factor favored defendant. That does not, however, mean that YK's preference would control the entire outcome. *Treutle*, 197 Mich App at 694-695. Third, factor (i) considers the child's "reasonable preference . . . ." MCL 722.23(i). A child's preference is not reasonable where it is arbitrary or inherently indefensible. *Maier*, 311 Mich App at 224. Where a preference is the product of "coaching and emotional distress[,]" it is inherently indefensible. *Id*. at 225. Here, there was substantial evidence that defendant had intentionally alienated VK from plaintiff and was attempting to do the same to YK. Even assuming that YK indicated a preference to live with defendant, the trial court would not have clearly erred by placing little or no weight on this preference under the circumstances, as it may well have been an unreasonable preference.

Factor (j) considers the willingness and ability of each parent to foster a close relationship between the child and the other parent. MCL 722.23(j). The trial court found that this factor weighed in plaintiff's favor, explaining that plaintiff had testified to defendant's "alienating and brainwashing behavior," that defendant had called plaintiff disparaging names, that plaintiff's relationship with VK was essentially nonexistent because of defendant's conduct, and that YK informed plaintiff of several instances where defendant spoke poorly of her. The trial court found this testimony credible, noting that at the hearing, defendant openly questioned whether it was appropriate to consider plaintiff a human being. And on the other hand, the trial court found no evidence that plaintiff disparaged defendant or would try to damage YK's relationship with defendant.

Defendant asks how he could call plaintiff disparaging names if he has not spoken to her in four years, a fact that both parties acknowledged is true. The answer is simple: defendant can speak about plaintiff when she is not present and call her disparaging names to others, such as VK and YK. Defendant argues that no other evidence supported plaintiff's testimony that defendant alienated VK from her. But the evidence exists in plaintiff's testimony, which the trial court found credible, and the fact that VK clearly has aligned himself with defendant and against plaintiff. Further demonstrating that defendant would likely seek to damage YK's relationship with plaintiff was defendant's testimony questioning whether it was even appropriate to consider plaintiff a human being, as well as his testimony that he would do nothing to encourage YK to have a relationship with plaintiff; rather, he would leave it up to YK to decide whether he should

---

[3] The GAL provided such testimony, despite the trial court's repeated requests that the GAL not state any such opinion at the custody hearing because the trial court would interview YK on its own.

have a relationship with her.[4] The trial court's finding was not against the great weight of the evidence.

Factor (k) considers domestic violence, regardless of whether the child witnesses or is the target of any such violence. MCL 722.23(k). Relying on plaintiff's testimony, the trial court found that defendant verbally and physically abused plaintiff during their relationship, concluding that this factor weighed in plaintiff's favor. Defendant argues that this testimony was not sufficient because plaintiff did not offer further substantive proof of the abuse, because the acts must have occurred several years ago, and because there was no evidence of a police report. Simply put, once again, the evidence was plaintiff's testimony, which the trial court found credible. Defendant offers no authority for the proposition that this testimony had to be supported by police reports or other "substantive" evidence to be deemed credible. Nor does defendant present any authority holding that the acts should have been ignored because they occurred while the parties were married.

Defendant also contends that the trial court did not mention acts of violence defendant testified were committed by plaintiff against YK. He cites his own testimony, during which he claimed that plaintiff was drunk and beat YK. Defendant could not identify when this incident occurred other than to say he believed it occurred in the past year. He claimed to have a police report regarding the incident, but did not make any attempt to introduce the police report at the evidentiary hearing. It is understandable that the trial court did not cite this incident, as the trial court previously found that neither party had a problem with alcohol. It would seem that the trial court simply found defendant's testimony not credible. This Court will not interfere with the trial court's credibility determinations. *Berger*, 277 Mich App at 707.

Finally, defendant challenges the trial court's findings regarding factor (l), which allows a court to contemplate "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." The trial court did not explicitly state a conclusion regarding who this factor favored, but explained that defendant changed YK's school in contravention of the trial court's order that his school not be changed. Defendant contends that this finding was erroneous because both parties testified that they signed the form enrolling YK in a new school. This is true; both parties did acknowledge signing the form. However, plaintiff testified that she was threatened by defendant and VK, and that her signature was the result of this threat, not her free will. The trial court clearly found plaintiff's explanation credible.

Defendant essentially argues that plaintiff should not be believed. Again, we defer to the trial court's credibility determinations. *Berger*, 277 Mich App at 707. But we also note that there are several reasons why the trial court likely found defendant's version of the events

---

[4] Defendant further contends that if the trial court had permitted him to proceed with his parenting time motions, the factor would have been resolved differently. The trial court stated that it would address these issues at the custody hearing. If defendant had any additional relevant evidence to present, his opportunity was at the hearing. Any failure to present additional evidence rests with defendant, not the trial court.

unbelievable. The issue of where YK would attend school has long been a sticking point between the parties. When plaintiff first left the marital home, she enrolled YK in a public school. Defendant removed YK from this school and enrolled him in the Manoogian School. After the first custody hearing and decision in this matter, the trial court awarded sole legal custody of YK to plaintiff, and plaintiff then enrolled YK in a public school near her home. Thus, it has been clear for many years that defendant wants YK to attend the Manoogian School, while plaintiff does not.

Further, while defendant later presented the enrollment form and testified that the decision to enroll YK in the Manoogian School was a mutual decision, he testified that he had not communicated with plaintiff for four years. And when it first came to the trial court's attention that YK's school had been changed, which was a direct violation of a prior order by the court, the trial court appointed counsel to represent defendant, as he was then facing a contempt finding and jail time. In responding to the allegations, his attorney represented to the court that defendant had changed YK's school unilaterally, claiming that YK was being physically harmed by other students at his former school. Thus, defendant's about-face in his own testimony, claiming that the decision was mutual, faced serious credibility concerns. It is not surprising, then, that the trial court found that defendant violated the trial court's order and changed YK's school. Defendant fails to demonstrate that the trial court's finding was against the great weight of the evidence.

## III. CUSTODY DETERMINATION

Defendant's third issue contends that because the trial court was biased against him, and because the trial court's factual findings with respect to the best-interest factors were against the great weight of the evidence, its ultimate custody determination constituted an abuse of discretion.[5] For the reasons discussed in Sections I and II of this opinion, the arguments underlying this particular challenge are without merit. Thus, defendant has not shown that the trial court's custody determination was an abuse of discretion.

## IV. CREDIBILITY

Finally, defendant argues that the trial court "clearly erred" by finding plaintiff credible. At the risk of sounding redundant, we repeat that this Court defers to the trial court's credibility determinations given its "superior position to assess the credibility of the witnesses appearing

---

[5] The trial court's ultimate custody determination is reviewed for an abuse of discretion. *Maier*, 311 Mich App at 221. But in the context of custody disputes, an abuse of discretion is not judged by the "default" abuse-of-discretion standard that applies in most other contexts, i.e., the "principled outcomes" standard. *Id*. at 222-223. Instead, as to custody matters, an abuse of discretion occurs if the trial court's decision is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id*. at 221 (quotation marks omitted).

-11-

before it . . . ." *Shann v Shann*, 293 Mich App 302, 307; 809 NW2d 435 (2011). And in this case, defendant's arguments present no reason to deviate from that well-ingrained principle. Plaintiff's testimony did not, as defendant contends, demonstrate that she has falsely reported her income to the Internal Revenue Service, or misrepresented her income to obtain financial assistance from the state. And to the extent the trial court found plaintiff's testimony regarding YK's enrollment at the Manoogian School credible, that decision was quite understandable under the circumstances. Defendant demonstrates no reason for this Court to interfere with the trial court's credibility determinations.

Affirmed. Having fully prevailed on appeal, taxable costs are awarded to plaintiff under MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy
/s/ Michael J. Riordan

-12-