*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FORFEITURE OF BANK, CREDIT UNION, AND INVESTMENT ACCOUNTS.

PEOPLE OF THE STATE OF MICHIGAN and THUMB NARCOTICS UNIT,

Plaintiffs-Appellants,

v

ALL BANK, CREDIT UNION, AND INVESTMENT ACCOUNTS OF CLAIMANTS, 2011 GMC PICKUP, 2012 SPRINGDALE RV, 2014 AUDI, 2015 LEXUS, 2015 SUBARU FORESTER, 1740 MIDLAND RD, SAGINAW, 5410 MEADOWCREST DR, ANN ARBOR, 1741 ROBERTS RD, FREELAND, and 12730 WADSWORTH RD, SAGINAW,

Defendants,

JOSEPH OESTERLING, CARMEN OESTERLING, and MIDWEST PROSTATE AND UROLOGICAL INSTITUTE,

Claimants-Appellees,

and

LAURA HINTZ and MARK HINTZ,

Claimants.

UNPUBLISHED
December 3, 2019

No. 346082
Tuscola Circuit Court
LC No. 16-029500-CF

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

-1-

In this civil forfeiture proceeding, plaintiffs, People of the State of Michigan and Thumb Narcotics Unit, appeal the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to claimants Dr. Joseph Oesterling, Carmen Oesterling, and Midwest Prostate and Urological Institute (MPUI).[1]  We affirm.

## I.  FACTUAL BACKGROUND

During 2015 and 2016, the Drug Enforcement Administration (DEA) and Thumb Narcotics Unit investigated allegations that Dr. Oesterling was engaged in prescription fraud and illegal overprescribing of controlled substances.  In October 2016, the Tuscola Circuit Court ordered law enforcement to seize real property, vehicles, and all money held in bank accounts in the names of MPUI, Joseph Oesterling, and Carmen Oesterling.  The estimated value of the seized property was $6,386,782.

Search warrants were executed in October 2016, and police interviewed the Oesterlings, Dr. Oesterling's patients, and Dr. Oesterling's employees.  In December 2016, Dr. Oesterling was charged with one count of conducting a criminal enterprise, five counts of delivery of a schedule 2 controlled substance (Norco), and one count of maintaining a drug house.  The alleged criminal activity took place between February 2015 to November 2016; MPUI's gross revenue during that time was $1,680,648.  In October 2017, following a jury trial, Dr. Oesterling was acquitted of all charges.

After the criminal trial, forfeiture claims over a parcel of property and several accounts were dismissed by stipulation.  The remaining seized assets included bank accounts, three vehicles, and real property constituting MPUI's business address in Saginaw and the Oesterlings' home in Ann Arbor.

Claimants moved for summary disposition of the civil forfeiture proceeding in pertinent part under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact regarding whether a substantial connection existed between the remaining seized assets and the alleged criminal activity.  Plaintiffs responded that claimants' property was subject to forfeiture because Dr. Oesterling did not prescribe controlled substances in a good-faith manner.  Plaintiffs argued that the testimony of two DEA agents linked MPUI's business checking account to each of the seized properties, and that MPUI "received vast sums of money" from the 21-month period when Dr. Oesterling was allegedly engaged in illegal activity.

After a hearing on the motion, the trial court granted summary disposition on the basis that plaintiffs had failed to demonstrate a genuine issue of material fact because they had not responded to claimants' motion with admissible evidence.  Specifically, the DEA agents had testified at deposition that they could not connect the business checking account to illegal activity, and plaintiffs had not provided any testimony or evidence in support to link MPUI's income to illegal practices.  The court reasoned that, because plaintiffs' claims were based on

---

[1] Claimants Laura Hintz and Mark Hintz were previously dismissed from this case and, for the purposes of this opinion, "claimants" refers only to the Oesterlings and MPUI.

conjecture, it could not determine whether there was genuine criminal activity tied to the business checking account. It granted summary disposition to claimants.

## II. ANALYSIS

Plaintiffs argue that the trial court erred by granting summary disposition to claimants because each of the seized assets was substantially connected to criminal activity. We conclude that the trial court did not err because plaintiffs failed to provide admissible evidence demonstrating a genuine issue of material fact on that matter.[2]

In pertinent part, property is subject to forfeiture if it is "[a]ny thing of value that is furnished or intended to be furnished in exchange for a controlled substance . . . in violation of [the Public Health Code, MCL 333.7101 *et seq.*,] that is traceable to an exchange for controlled substances . . . ." MCL 333.7521(1)(f). Accordingly, "anything of value that can be traced to an exchange for a controlled substance is subject to forfeiture . . . ." *In re Forfeiture of $1,159,420*, 194 Mich App 134, 146; 486 NW2d 326 (1992). Further, anything of value "that is used or intended to be used to facilitate" a violation of controlled substances laws may be forfeited. MCL 333.7521(1)(f). However, property is only subject to forfeiture if there is a substantial connection between the property and the underlying illegal transaction. *In re Forfeiture of $5,264*, 432 Mich 242, 262; 439 NW2d 246 (1989). A court may not order the forfeiture of property "which has only an incidental or fortuitous connection to the unlawful activity." *Id*. at 260-261.

Here, the forfeiture complaint is largely based on the business checking account. Plaintiffs assert that all of the funds from the alleged overprescribing were placed in the business checking account. Because the other seized accounts received funds from the business checking account, plaintiffs contend that all of the accounts are substantially connected to illegal activity. Plaintiffs also argue that because the vehicles were purchased with funds from the accounts, they are also substantially connected to illegal activity. Plaintiffs further allege that the Oesterlings' personal residence is subject to forfeiture because funds from the accounts were used to pay a loan that was secured by the residence.

However, in support of their motion for summary disposition, claimants proffered evidence showing that plaintiffs could not tie the funds in the accounts to illegal activity. Specifically, one DEA agent testified that it was impossible for her to say whether the proceeds in the business checking account were the proceeds of illegal deliveries of controlled substances and that she had no opinion about a connection between the business checking account and the

---

[2] We review de novo a lower court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10). A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

underlying criminal activity. Similarly, a second DEA agent testified that he could not trace any money back to any criminal activity because he was only involved in tracing money out of the business checking account to other accounts. Dr. Carl Christensen had examined a small number of patient charts, but he did not know whether the charts he reviewed were representative of Dr. Oesterling's practice. Accordingly, it was impossible to extrapolate Dr. Christensen's testimony into a percentage of Dr. Oesterling's practice that purportedly violated controlled substances law.

In response to claimants' motion for summary disposition under MCR 2.116(C)(10), plaintiffs failed to present contrary evidence showing that they could trace the accounts to illegal activity. Instead, they reiterated the allegations in the complaint. Yet once the moving party has identified issues in which there are no disputed issues of material fact, the burden is on the nonmoving party to show that disputed issues exist. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party "may not rest upon the mere allegations or denials of his or her pleading" but instead must "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). For the purposes of a motion under MCR 2.116(C)(10), "disputed fact, or the lack of it, must be established by admissible evidence." *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 321; 575 NW2d 324 (1998), mod on other grounds by *Harts v Farmers Ins Exchange*, 461 Mich 1; 597 NW2d 47 (1999). Accordingly, the trial court did not err by granting summary disposition when plaintiffs failed to respond to claimants' motion with admissible evidence showing a genuine issue of material fact.

Plaintiffs are correct that they do not need to establish a connection to a specific incident of criminality for each asset. See *In re Forfeiture of $1,159,420*, 194 Mich App at 147. A substantial connection between a bank account and illegitimate drug proceeds may be demonstrated when the claimants are living beyond their legitimate income and "there was no adequate explanation" for money in a bank account "other than being proceeds of a drug transaction[.]" *Id*. at 155. This may exist when the plaintiffs establish that "claimants had an exceedingly large income and amount of assets beyond what could be legitimately accounted for." *Id*. at 147.

But plaintiffs did not cite any evidence that the amount of funds in claimants' accounts could not be legitimately explained. To the contrary, a certified public accountant who had reviewed the accounts averred in an affidavit that the money in the business checking account was consistent with a normal medical practice. The CPA also asserted that transferring funds between the various accounts were all normal parts of a medical practice. Plaintiffs did not rebut those statements with admissible evidence.

Plaintiffs also rely heavily on *United States v All Monies In Account No 90-3617-3*, 754 F Supp 1467 (D Haw 1991), which is not binding on this Court. See *People v Fombly*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013). In any event, that case is inapposite. There, the federal district court held that a bank account was subject to federal forfeiture law when there was probable cause that the account facilitated money laundering in violation of federal law. *Id*. at 1475-1476. The case does not stand for the proposition, as plaintiffs suggest, that the "commingl[ing]" of illegitimate and legitimate funds renders the latter subject to forfeiture. Accord *United States v $448,342.85*, 969 F2d 474, 476 (CA 7, 1992) ("[T]he presence of one illegal dollar in an account does not taint the rest—as if the dollar obtained from fraud were like

a drop of ink falling into a glass of water."). Rather, the account in *All Monies* was subject to forfeiture because it had a substantial connection to the illegal activity.

In sum, plaintiffs maintain that the business checking account contains funds derived from illegal activity. Assuming for purposes of this appeal that claimants violated controlled substances laws, plaintiffs are undoubtedly correct. However, they have not provided any evidence showing: (1) that all of the funds are substantially connected to the alleged overprescribing or (2) that there is a way to distinguish between legitimate and illegitimate funds. And plaintiffs' allegations regarding all property but the Saginaw business real estate and the currency found at that address depended on connections to the business checking account. Under those circumstances, the trial court correctly determined that plaintiffs failed to provide evidence establishing that there was a question of material fact regrading whether the seized property had a substantial connection to criminal activity.

Regarding the Saginaw real estate and currency, while plaintiffs alleged that witnesses would testify that illegitimate prescription practices occurred at the property, plaintiffs again failed to provide any admissible evidence in response to claimants' motion. The reports of Dr. Christensen indicate that Dr. Oesterling wrote unwarranted prescriptions, but the reports did not identify any specific location at which the behavior occurred, and Dr. Christensen admitted at deposition that he did not know whether the charts he reviewed were representative of Dr. Oesterling's practice. And while the complaint rested on the allegations of confidential informants, an undercover officer, patients, and claimants' present and former employees, plaintiffs provided no admissible evidence from any of these potential witnesses in response to the motion.[3] Accordingly, the trial court did not err when it found that plaintiffs had failed to

---

[3] Plaintiffs asked the trial court to take judicial notice of the transcripts and evidence from Dr. Oesterling's criminal trial as factual support for its motion. The trial court declined to do so, however, stating that while it might not be impossible to infer criminality from considering those proceedings, it would not render an opinion from inference. On appeal, plaintiffs note that the trial court could have taken judicial notice of the criminal record, but they do not address or dispute the trial court's decision not to do so. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) ("When an appellant fails to dispute the basis of the trial court's ruling, '[t]his Court . . . need not even consider granting plaintiffs the relief they seek.' " (citation omitted). Further, plaintiffs have not provided us with the transcripts on appeal and so it is impossible for us to review the trial court's decision, or to consider whether the evidence adduced at the criminal trial created a material question of fact.

establish a question of material fact regarding whether the Saginaw real estate and currency was substantially connected to criminal activity.[4]

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

---

[4] Because we affirm the trial court's grant of summary disposition under MCR 2.116(C)(10), we decline to address claimants' alternative ground for affirmance that summary disposition was warranted under MCR 2.116(C)(8).